673 F.2d 969
 3 Ed. Law Rep. 476
 Terri Ann MIENER, by and through her next friend and parent,
Clyde J. Miener, Appellant,
v.
STATE OF MISSOURI, and Joseph P. Teasdale, Governor;
Department of Elementary and Secondary Education of the
State of Missouri, Arthur L. Mallory, Commissioner of
Education of the Department of Elementary and Secondary
Education of the State of Missouri; Dr. Leonard Hall,
Assistant Commissioner of Education, The Division of Special
Education of the Department of Elementary and Secondary
Education of the State of Missouri, The Special School
District of St. Louis County, Missouri; The Board of
Education of the Special School District of St. Louis
County, Missouri; Allan G. Barclay, Gerald K. Braznell, and
Gerald B. Hansen, Directors of the Special School District
of St. Louis County, Missouri; Mr. Thomas E. Smith,
Superintendent of Schools of the Special School District of
St. Louis County, Missouri; Department of Mental Health of
the State of Missouri, Joe L. Winter, Commissioner of the
Department of Mental Health of the State of Missouri; Paul
R. Ahr, Acting Director of the Department of Mental Health
of the State of Missouri; Mr. John Twiehaus, individually
and in his official capacity as the Acting Superintendent of
the St. Louis State Hospital; Dr. Milton Fujita,
individually and in his former official capacity as Medical
Director of the Youth Center of the St. Louis State
Hospital, Missouri State Board of Education, Appellees.
 No. 80-1971.
 United States Court of Appeals,
Eighth Circuit.
 Submitted April 15, 1981.
Decided Feb. 4, 1982.
 
 Steven L. Leonard, Clayton, Mo., for appellant.
 Schmitz & Fischer, M. Peter Fischer, Mary Stake Hawker, St. Louis, Mo., for Special School Dist., appellees.
 John Ashcroft, Atty. Gen., Robert L. Presson, Asst. Atty. Gen., Jefferson City, Mo., for State of Missouri; Simon Tonkin, Asst. Atty. Gen., St. Louis, Mo., Leslie Ann Schneider, Asst. Atty. Gen., Jefferson City, Mo., of counsel.
 L. Steven Goldblatt, Atty., Clayton, Mo., for The American Civil Liberties Union of Eastern Missouri.
 Before BRIGHT, HENLEY and ARNOLD, Circuit Judges.
 HENLEY, Circuit Judge.
 
 
 1
 Appellant Terri Ann Miener, by and through her guardian and next friend Clyde J. Miener, brought this action against several state and local governmental entities to secure rights allegedly due to her as a handicapped person. She sought declaratory, injunctive and monetary relief pursuant to 42 U.S.C. § 1983; the Rehabilitation Act of 1973, Pub.L. 93-112, 87 Stat. 355 (1973), 29 U.S.C. § 701 et seq. (the Rehabilitation Act); the Education for All Handicapped Children Act of 1975, Pub.L. 94-142, 89 Stat. 773 (1975), 20 U.S.C. § 1401 et seq. (EAHCA or the Education Act); and the equal protection clause of the fifth and fourteenth amendments.[1] Appellant appeals several orders[2] of the district court which, taken together, serve to dismiss her claims to damage relief on the merits prior to hearing.
 
 
 2
 We assume jurisdiction pursuant to 28 U.S.C. § 1291. We reverse in part and affirm in part the district court's dismissal, and remand the case for further proceedings consistent with this opinion.
 
 
 3
 Appellant has a history of serious medical problems highlighted by the occurrence and reoccurrence of a brain tumor, initially at age two, and later at age fourteen. As a result of this condition and attendant surgery, she suffers serious learning disabilities and behavioral disorders.
 
 
 4
 Appellant alleged[3] that she was a voluntary resident at facilities of the Missouri Department of Mental Health beginning in June, 1977. From this time until April, 1980 when she was removed to a private facility, appellant claimed that she was deprived of an appropriate free education in violation of the Education for All Handicapped Children Act, 20 U.S.C. § 1411. She also alleged that defendants denied her equal access to educational facilities, in violation of the antidiscrimination provisions contained in Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, and in violation of 42 U.S.C. § 1983.
 
 
 5
 Numerous individuals and political bodies and agencies were named as defendants, including the State of Missouri and its Chief Executive Officer, Governor Joseph P. Teasdale; the Missouri Department of Elementary and Secondary Education, and its Commissioner, Arthur Mallory, and Assistant Commissioner, Dr. Leonard Hall; the Missouri Department of Mental Health, its acting Director, Dr. Beverly Wilson, and the Commissioner of Mental Health for the State of Missouri, Norman Tice; the acting Superintendent of the St. Louis State Hospital, John Twiehaus, and the former Medical Director of the Youth Center at that Hospital, Dr. Milton Fujita; the Special School District of St. Louis County, Missouri, its Board of Education, its Directors, Allan Barclay, Gerald Braznell, and Gerald Hansen, and its Superintendent of Schools, Thomas Smith.
 
 
 6
 Appellant prayed for injunctive relief in the form of equal access to all programs and facilities of the St. Louis State Hospital and participation in the special education programs of the St. Louis County Special School District. She asserted a right to damages in the amount of $50,000.00 for deprivation of her constitutional right of equal protection and statutory rights, and $474,358.00 for violation of her statutory right to a full and adequate education. She sought prospective relief in the form of compensatory educational services to overcome the effects of any past denial of special educational services.
 
 
 7
 The district court initially ordered appellant to pursue administrative remedies under the EAHCA and Missouri statutes. On January 25, 1980 the court dismissed appellant's claims for damages under the Rehabilitation and Education Acts on the ground that no private cause of action for damages exists pursuant to these statutes. The court also dismissed all claims pursuant to 42 U.S.C. § 1983, while refusing to dismiss the enforcement claims asserted under the Education Act and § 504 of the Rehabilitation Act. The pendent tort claim and the claim for compensatory education also remained.
 
 
 8
 In the course of pursuing administrative remedies, the parties eventually settled the enforcement claims. A settlement agreement, approved by the district court on April 23, 1980, provided for appellant's placement, education and psychiatric treatment in the Crittenton Center and Hickman-Mills School District in Kansas City, Missouri.
 
 
 9
 The state defendants thereafter, on July 8, 1980, filed a motion to dismiss the claim for compensatory education on the ground that this was a claim for damages which must fall in accordance with the district court's dismissal of damage claims in its January 25, 1980 order. On September 19, 1980 the district court agreed, dismissing the claim for compensatory education as a request for damages barred by the eleventh amendment. The state tort claim was dismissed without prejudice. The motion of the St. Louis County Special School District for summary judgment was dismissed as moot.
 
 
 10
 Appellant's primary allegations on appeal are that the district court erred in (1) ruling that a private right of action for damages is not available under Section 504 of the Rehabilitation Act; (2) ruling that a private right of action for damages cannot be implied under the Education Act; (3) dismissing her claim under 42 U.S.C. § 1983 for failure to state a claim; (4) dismissing her claim for compensatory education as an action for damages barred by the eleventh amendment. Because we reverse in part the district court's dismissal, we are obliged also to reach the allegation that the district court abused its discretion in denying appellant leave to amend her complaint.
 
 
 11
 The crux of this appeal is whether a cause of action for damages can be entertained under any of the statutes relied on by appellant. This inquiry necessarily involves a two-step analysis. We ask first whether a private cause of action may be asserted pursuant to the statutes named in her complaint. As a separate question, we examine the propriety of damage relief. Davis v. Passman, 442 U.S. 228, 244, 99 S.Ct. 2264, 2276, 60 L.Ed.2d 846 (1978) (implication of a right of action is analytically distinct and prior to the question of what relief, if any, a litigant may be entitled to receive).
 
 I. PRIVATE CAUSE OF ACTION
 
 12
 (A) Section 504 of the Rehabilitation Act
 
 
 13
 The district court held, correctly we believe, that under the test of Cort v. Ash, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), and the authority of Cannon v. University of Chicago, 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979), individual plaintiffs have a private cause of action under Section 504 of the Rehabilitation Act. The weight of authority in this and other circuits supports the implication of a cause of action. See Pushkin v. Regents of the University of Colorado, 658 F.2d 1372 (10th Cir. 1981); Simon v. St. Louis County, 656 F.2d 316 (8th Cir. 1981), petition for cert. filed, 50 U.S.L.W. 3404 (U.S. Nov. 17, 1981) (No. 81-850); Kling v. County of Los Angeles, 633 F.2d 876 (9th Cir. 1980); Carmi v. Metropolitan St. Louis Sewer District, 620 F.2d 672, 675 (8th Cir.), cert. denied, 449 U.S. 892, 101 S.Ct. 249, 66 L.Ed.2d 117 (1980); Camenisch v. University of Texas, 616 F.2d 127, 131 (5th Cir. 1980), vacated on other grounds, 451 U.S. 390, 101 S.Ct. 1830, 68 L.Ed.2d 175 (1981); NAACP v. Medical Center, Inc., 599 F.2d 1247, 1258-59 (3d Cir. 1979); Davis v. Southeastern Community College, 574 F.2d 1158, 1159 (4th Cir. 1978), rev'd on other grounds, 442 U.S. 397, 99 S.Ct. 2361, 60 L.Ed.2d 980 (1979); Leary v. Crapsey, 566 F.2d 863 (2d Cir. 1977); United Handicapped Federation v. Andre, 558 F.2d 413, 415 (8th Cir. 1977); Kampmeier v. Nyquist, 553 F.2d 296, 299 (2d Cir. 1977); Lloyd v. Regional Transportation Authority, 548 F.2d 1277, 1284-87 (7th Cir. 1977) (but expressly leaving open the question whether enforcement regulations yet to be issued might limit judicial remedies, at n.29).
 
 
 14
 We find no reason to reiterate the thorough review of legislative history contained in the above-cited authorities. We expressly note, however, that we have reexamined these cases in light of recent Supreme Court decisions which could be perceived to offer an opportunity for a different result. For reasons more fully indicated in the footnote,[4] we are persuaded that recent Supreme Court rulings should not change our finding of a private cause of action under § 504.
 
 
 15
 The barrier to appellant's Section 504 cause of action, if any, lies in an aspect of standing which we raise sua sponte as a jurisdictional matter. This barrier involves the incorporation of Title VI remedies into the Rehabilitation Act. Section 504 of the Rehabilitation Act provides by its terms that no otherwise qualified individual shall be discriminated against under any program or activity receiving federal financial assistance. 29 U.S.C. § 794. Section 505 breathes remedial life into this provision by making available to the aggrieved plaintiff the procedures and remedies of Title VI of the Civil Rights Act of 1964.[5] The incorporation of Title VI remedies, however, has proved to be a double-edged sword. Section 604 of Title VI, 42 U.S.C. § 2000d-3, states:
 
 
 16
 Nothing contained in this subchapter shall be construed to authorize action under this subchapter by any department or agency with respect to any employment practice of any employer, employment agency, or labor organization except where a primary objective of the Federal financial assistance is to provide employment.
 
 
 17
 (emphasis added). This express limitation on standing under Title VI gives rise to the question whether Congress intended the limitations in Title VI to apply in an action under § 504.
 
 
 18
 Judicial thought on this question is divided. Compare cases regarding Section 604 of Title VI as a limitation on standing under Section 504, Simon v. St. Louis County, supra, 656 F.2d at 319 n.6; Simpson v. Reynolds Metals Co., 629 F.2d 1226, 1234 and n.13 (7th Cir. 1980); United States v. Cabrini Medical Center, 639 F.2d 908, 910-11 (2d Cir. 1981); Carmi v. Metropolitan St. Louis Sewer District, supra, 620 F.2d at 674-75; Trageser v. Libbie Rehabilitation Center, Inc., 590 F.2d 87, 88-89 (4th Cir. 1978), cert. denied, 442 U.S. 947, 99 S.Ct. 2895, 61 L.Ed.2d 318 (1979); with Carmi v. Metropolitan St. Louis Sewer District, supra, 620 F.2d at 679 and n.11 (McMillian, J., dissenting); North Haven Board of Education v. Hufstedler, 629 F.2d 773, 786 (2d Cir. 1980) (closely analogous context of Title IX), cert. granted, 450 U.S. 909, 101 S.Ct. 1345, 67 L.Ed.2d 332 (1981). Cases in this Circuit which have regarded Section 604 as a limitation on standing, however, have involved allegations of discrimination in employment. Simon v. St. Louis County, supra; Carmi v. Metropolitan St. Louis Sewer District, supra. Indeed, the language in Section 604 is facially directed to circumstances of alleged discrimination in employment.
 
 
 19
 Here, appellant is not trying to get a job. She alleges discrimination in the provision of educational services. In these circumstances, Section 604 does not apply and appellant's standing is unaffected by the Title VI requirement that an aim of the federal funding must be to provide employment.
 
 
 20
 (B) The Education Act
 
 
 21
 Appellees do not dispute that the Education for All Handicapped Children Act provides a private cause of action in federal court. See 20 U.S.C. § 1415(e) (2). The contested issue with respect to the Education Act is the availability of damages, hereinafter discussed.
 
 
 22
 (C) Section 1983
 
 
 23
 The availability of a remedy under § 1983 presents a more difficult question. The district court concluded that discrimination on the basis of handicaps is made illegal by Section 504, not by the Constitution. Accordingly, the court concluded that appellant failed to state a § 1983 claim for two reasons: a statutory violation was insufficient to support a claim under § 1983, and invidious discrimination in violation of the equal protection clause of the Constitution has not been alleged.
 
 
 24
 The opinion in Maine v. Thiboutot, 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980), not available when the district court made its determination, renders this analysis inadequate. In that case, the Supreme Court held that § 1983 encompassed a claim based purely on statutory violations of federal social security statutes. 448 U.S. at 4-6, 100 S.Ct. at 2503-2505. The Court expressly stated that § 1983 is not limited to violations of civil rights or equal protection laws. Id. at 6-8, 100 S.Ct. at 2505-2506. Under the reasoning of Thiboutot, § 1983 arguably provides a remedy[6] for violations of the Rehabilitation Act or the Education for All Handicapped Children Act, or both.
 
 
 25
 The difficult question here is whether either of two exceptions to the Thiboutot doctrine apply. A § 1983 cause of action does not lie (1) where Congress has foreclosed a § 1983 remedy through sufficiently comprehensive remedial devices in the underlying act, and (2) where the statute at issue does not create "rights, privileges, or immunities" within the meaning of § 1983. Middlesex County Sewerage Authority v. National Sea Clammers Association, --- U.S. ----, ----, 101 S.Ct. 2615, 2626, 69 L.Ed.2d 435 (1981); Pennhurst State School & Hospital v. Halderman, 451 U.S. 1, 27-30, 101 S.Ct. 1531, 1545-46, 67 L.Ed.2d 694 (1981).
 
 
 26
 The parties and the district court have been afforded no opportunity to address these complex and important exceptions. Case law is divided on the availability of § 1983 as a remedy for violations of the Education Act and Rehabilitation Act. Anderson v. Thompson, 658 F.2d 1205 at 1214-1217 (7th Cir. 1981) (§ 1983 does not provide remedy for claims under EAHCA); Pushkin v. Regents of the University of Colorado, supra, 658 F.2d 1372 at 1382 (10th Cir. 1981) (§ 1983 provides remedy for violation of § 504 without exhaustion of administrative remedies); Tatro v. Texas, 516 F.Supp. 968, 984 (N.D.Tex.1981) (§ 1983 provides remedy under EAHCA provided administrative remedies are exhausted); McGowan v. Hahn, No. 78-C-4233 (N.D.Ill. July 27, 1981) (§ 1983 provides remedy for violation of § 504); Medley v. Ginsberg, 492 F.Supp. 1294, 1305 (S.D.W.Va.1980) (plaintiffs may state § 1983 claim based on the Rehabilitation Act or Education Act); Boxall v. Sequoia Union High School District, 464 F.Supp. 1104, 1113 (N.D.Cal.1979) (damages under § 1983 are available to enforce federal statutory rights guaranteed by the EAHCA); cf. Romeo v. Youngberg, 644 F.2d 147, 170 (3d Cir. 1980) (en banc) (§ 1983 may provide a remedy for statutory claims grounded in the Developmentally Disabled Assistance and Bill of Rights Act), cert. granted, 451 U.S. 982, 101 S.Ct. 2313, 68 L.Ed.2d 838 (1981). The authority of these cases is also subject to the limitation that several were decided after Thiboutot, but prior to Pennhurst and Middlesex, supra, in which the Supreme Court recognized limitations on the Thiboutot doctrine.
 
 
 27
 Remand is also indicated because appellant's complaint is unclear in two respects. The complaint does not unequivocally disclose whether damages are sought pursuant to § 1983. Counts II and III, which were interpreted by the district court as asserting claims under § 1983, contain prayers for injunctive relief. One conclusion which could be drawn is that appellant relies upon § 1983 only for injunctive relief, which is now a moot issue.
 
 
 28
 More important, appellant's prayer for relief includes a request for $50,000.00 for "depriv(ation) ... of the equal protection of the laws and ... of ... civil ... and constitutional rights; $474,358.00 for "violation of ... statutory and civil rights in denying plaintiff her rights to a full and adequate education"; $15,000.00 "for ... personal injuries"; and compensatory relief in the form of additional education. This pleading does not make clear whether the damages requested for alleged statutory violations are coextensive with the damages sought pursuant to § 1983. If appellant intends to utilize § 1983 to recover damages not obtainable pursuant to the underlying statutes, our analysis would be affected by the apparent inconsistency of § 1983 and statutory remedies.
 
 
 29
 In sum, we remand for the district court's consideration of (1) the question whether appellant seeks damages, as opposed to injunctive relief, pursuant to § 1983; (2) the question whether, if appellant seeks monetary damages pursuant to § 1983, such damages are coextensive with those sought pursuant to the underlying statutes; (3) the question whether the exclusivity exception to the Thiboutot doctrine applies;[7] (4) the question whether the rights guaranteed by the underlying statutes are "rights secured by the laws of the United States" within the meaning of § 1983. On remand appellant may also wish to consider the extent to which her case is advanced by claim of a § 1983 cause of action, given our rulings as to availability of damages.
 
 II. DAMAGES
 
 30
 Having concluded that a cause of action exists under both the Education Act and the Rehabilitation Act, we are faced with the issue of available relief. Despite the existence of a cause of action, appellant's complaint is subject to dismissal under Fed.R.Civ.P. 12 unless it can be determined that the damage relief she seeks is appropriate. Davis v. Passman, supra, 442 U.S. at 244, 99 S.Ct. at 2276.
 
 
 31
 (A) Section 504
 
 
 32
 Appellant's right to damage relief under § 504 is an open question in this and other circuits. Pushkin v. Regents of the University of Colorado, supra, 658 F.2d 1372 at 1377 & n.2 (10th Cir. 1981); Camenisch v. University of Texas, supra, 616 F.2d at 132 n.10.
 
 
 33
 The starting point for our analysis is the principle enunciated by the Supreme Court in Bell v. Hood, 327 U.S. 678, 684, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946), that where legal rights are invaded and a federal statute provides a right to sue for such invasion, federal courts may use any available remedy to make good the wrong. The existence of a statutory right implies the existence of all necessary and appropriate remedies. Sullivan v. Little Hunting Park, Inc., 396 U.S. 229, 239, 90 S.Ct. 400, 405, 24 L.Ed.2d 386 (1969). Moreover, the right to seek money damages for civil rights violations is an accepted feature of the American judicial system. Patton v. Dumpson, 498 F.Supp. 933, 937 (S.D.N.Y.1980) (holding damages are available under § 504).
 
 
 34
 Without reference to these general principles, however, at least one court has held that the existence of an elaborate administrative structure for governmental enforcement of § 504 precludes a finding that Congress intended to provide a "whole panoply of new rights and remedies" for individuals. Boxall v. Sequoia Union High School District, supra, 464 F.Supp. at 1112. This argument must be accorded some weight in light of Supreme Court cases stating that "where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it." Transamerica Mortgage Advisors, Inc. v. Lewis, 444 U.S. 11, 19, 100 S.Ct. 242, 247, 62 L.Ed.2d 146 (1979) (and citations therein).
 
 
 35
 The facts in Transamerica, however, serve by contrast to highlight here the lack of statutory remedies such as can make the individual plaintiff whole. In Transamerica, a rescission remedy was expressly provided by statute, and federal courts had implied a cause of action for restitution and injunctive relief under the Investment Advisors Act of 1940. Id. Criminal penalties and administrative sanctions were also expressly authorized. Id. at 20, 100 S.Ct. at 247. In those circumstances, the Court found that Congress harbored no intention of providing an additional damage remedy. Id. at 21, 100 S.Ct. at 248.
 
 
 36
 However, the administrative enforcement remedies provided under the Rehabilitation Act are of little comfort to the individual plaintiff. The regulations adopted by the Department of Health and Human Services (HHS), incorporating procedures applicable to Title VI of the 1964 Civil Rights Act, 45 C.F.R. § 84.61; 45 C.F.R. § 80.6-81.10 (1981), provide administrative sanctions such as the termination of funds for acts of discrimination. 45 C.F.R. § 80.8. No provision is made for the complainant to furnish evidence or otherwise participate in the agency investigation. 45 C.F.R. § 80.7(c). The complainant has no right to object to, or seek administrative review of, HHS's findings. 45 C.F.R. § 80.7(d)(2). There is no provision for HHS to issue a binding order that damages be paid to an individual who has been injured by reason of a violation of § 504.
 
 
 37
 It is obvious that administrative remedies are inadequate to vindicate individual rights and that Congress could not have expected the individual plaintiff to be made whole through administrative procedures. Indeed, there is support for a damage remedy to be found in the legislative history of 1978 amendments to the Rehabilitation Act. The House-Senate Conference Committee eliminated a prohibition against money damages which had been proposed regarding vocational rehabilitation programs under the Act. H.R.Rep. 95-1780, 95th Cong., 2d Sess., reprinted in (1978) U.S.Code Cong. & Ad.News 7312, 7375, 7379.
 
 
 38
 We indulge the presumption of Bell v. Hood, supra, that a wrong must find a remedy, and in light of the inadequacy of administrative remedies, conclude that damages are awardable under § 504.[8] Campbell v. Talladega County Board of Education, 518 F.Supp. 47, 56-7 & n.13 (N.D.Ala.1981) (damages awardable but barred by impossibility of measurement and by eleventh amendment); Patton v. Dumpson, supra, 498 F.Supp. at 937-39; Poole v. South Plainfield Board of Education, 490 F.Supp. 948, 949 (D.N.J.1980); but see Boxall v. Sequoia Union High School District, supra, 464 F.Supp. at 1111-12 (relying on analogy to Title VI of the Civil Rights Act of 1964).[9]
 
 
 39
 Since administrative remedies are of little avail to the individual plaintiff, we also conclude that § 504 suits appropriately may be maintained in advance of the exhaustion of administrative remedies.[10]
 
 
 40
 We caution that our ruling that plaintiff may proceed with her damage action under § 504 of the Rehabilitation Act is limited in two respects. First, the eleventh amendment bars the recovery of damages against certain defendants, as indicated below. Second, as to those defendants who remain in the case, we expressly reserve judgment as to whether the nature of the discrimination asserted by appellant will support a § 504 recovery. It is unclear whether defendants' treatment of Terri Ann is alleged to be discriminatory when compared with the treatment of other handicapped children, when compared with the treatment of non-handicapped children, or when measured by the obligations imposed by the Education Act.
 
 
 41
 At this stage of the case, we hold only that damages are available under § 504 as a necessary remedy for discrimination against an otherwise qualified handicapped individual. Appellant's complaint gave adequate notice to defendants that they were charged with discriminatory denial of equal access to educational facilities, in violation of § 504.
 
 
 42
 (B) The Education Act
 
 
 43
 Damages are available under the Education Act if Congress intended to provide for such relief when authorizing "such relief as the (district) court determines is appropriate." 20 U.S.C. § 1415(e)(2). We have previously been spared the necessity of deciding whether "appropriate relief" includes damages. Monahan v. Nebraska, 645 F.2d 592, 598 n.9 (8th Cir. 1981). We now join the Seventh Circuit in holding it does not. Anderson v. Thompson, 658 F.2d 1205 (7th Cir. 1981).
 
 
 44
 Although some courts have assessed the availability of damages under a Cort v. Ash analysis, e.g., Loughran v. Flanders, 470 F.Supp. 110 (D.Conn.1979), we eschew this approach in favor of the narrower focus adopted in Anderson, supra. Congress has expressly created a cause of action in Section 615 of the Act and has empowered the district court to grant "such relief as the court determines is appropriate." 20 U.S.C. § 1415(e)(2). Accordingly, the question is simply whether damages are within the relief foreseen by Congress.
 
 
 45
 The reasoning and research of the Seventh Circuit on this point is conclusive in our view. As that court points out, Section 615 is entitled "Procedural Safeguards." The provision for suit in district court caps an entire sequence of procedures aimed at ensuring proper placements and programs for handicapped children. Anderson v. Thompson, supra, 658 F.2d at 1210-11. This context makes it clear that "appropriate" relief was generally intended to be restricted to injunctive relief, within which the district judge would have wide latitude to fashion an individualized educational program for the child. Id. at 1211.
 
 
 46
 The legislative history of the Education Act, like the language of the statute itself, provides little support for a damage remedy. This history has been amply set forth by the Seventh Circuit, and we find it unnecessary to restate it here. Id. at 1211-13. After careful independent review, we conclude that a damage remedy was not generally intended.
 
 
 47
 We depart from the Seventh Circuit's analysis, however, insofar as that court in dictum recognized two exceptional circumstances in which a limited damage award might be appropriate. These circumstances were, first, where there was a risk to the child's physical health in the program offered by the school system, and second, where the defendant acted in bad faith by failing to comply with the procedural provisions of Section 615 in an egregious fashion. Id. at 1213-14. Cf. Monahan v. Nebraska, 491 F.Supp. 1074, 1094 (D.Neb.1980) (tuition reimbursement available in circumstances of defendant's failure to comply with Act's procedural requirements), aff'd in part, vacated in part, 645 F.2d 592 (8th Cir. 1981); Boxall v. Sequoia Union High School District, supra, 464 F.Supp. at 1112 (reimbursement for private tutor available); Tatro v. Texas, supra, 516 F.Supp. at 977-80 (tuition reimbursement available where child could not be enrolled in defendant's facilities without risk of injury).
 
 
 48
 These cases reach a result which claims our sympathies, and which may be appropriate in special circumstances. But in the present case, nothing in the record suggests that appellant bases her claim to damages on exceptional circumstances like any of those in the cited cases. Moreover, as applied to the case at bar, the rationale of the cited cases relies on legislative history which we regard as insufficient to support a general right of recovery. While Congress might well have wished to provide a right of action for damages in some exceptional circumstances, we entertain serious doubt that the statute itself contains warrant for a general right, and, as indicated, we find no right to damages here.
 
 III. ELEVENTH AMENDMENT
 
 49
 Appellant's right to damage relief is further limited by the eleventh amendment. The district court dismissed appellant's prayer for compensatory educational services on eleventh amendment grounds. Although the court's ruling pertained only to this aspect of the relief requested, eleventh amendment immunity partakes sufficiently of a jurisdictional bar, Edelman v. Jordan, 415 U.S. 651, 677-78, 94 S.Ct. 1347, 1362-63, 39 L.Ed.2d 662 (1974), that we consider its application to all defendants and claims in this case.
 
 
 50
 A. Qualification as a "State"
 
 
 51
 The preliminary question in our eleventh amendment analysis is whether various defendants share the state's immunity. The ability of a defendant to partake of the state's eleventh amendment immunity depends, at least in part, on the nature of the entity created by state law. Mount Healthy City School District Board of Education v. Doyle, 429 U.S. 274, 280, 97 S.Ct. 568, 572, 50 L.Ed.2d 471 (1977). Controlling case law holds that a county, as well as the school board of such a political subdivision, does not occupy the same position as a state for eleventh amendment purposes. Id.; Edelman v. Jordan, supra, 415 U.S. at 667 n.12, 94 S.Ct. at 1357 n.12. The eleventh amendment therefore does not preclude the award of damages against the Special School District of St. Louis County, the Board of Education of the Special School District, or officials of the Special School District who are sued in their official capacity.
 
 
 52
 The Missouri Department of Elementary and Secondary Education and the Missouri Department of Mental Health stand on different footing. In determining whether a state agency or department shares the state's eleventh amendment shield, the key is who will pay for any judgment rendered in favor of appellant. Edelman v. Jordan, supra, 415 U.S. at 664-65, 94 S.Ct. at 1356-57; Jackson Sawmill Co. v. United States, 580 F.2d 302, 308-09 (8th Cir. 1978), cert. denied, 439 U.S. 1070, 99 S.Ct. 839, 59 L.Ed.2d 35 (1979).
 
 
 53
 Under the Omnibus State Reorganization Act of 1974, the Missouri Department of Elementary and Secondary Education and Missouri Department of Mental Health were created as wings of the executive branch of state government. Laws 1973, 1st Ex.Sess., p.530, S.B. No. 1 As Amended; 3A Mo.Ann.Stat., Appendix B (Vernon's) (Supp.1981). Appellant does not contest that any judgments against these departments would be paid from the state treasury.
 
 
 54
 The immunity of these two departments of the State extends to entities within the departments. Section 9(5) of the Omnibus State Reorganization Act of 1974, supra, 3A Mo.Ann.Stat., App. B (Vernon's) (Supp.1981), establishes within the Department of Mental Health a Division of Mental Retardation and Developmental Disabilities. The director of the division administers various state facilities, including the "St. Louis State School Hospital." Assuming that this is the same facility as the "St. Louis State Hospital" referred to in appellant's complaint, the Hospital and its Youth Center must obviously share the cloak of immunity which pertains to the Department of Mental Health. Appellant's complaint in Count III asserts that various defendants "acting under the authority of the State of Missouri, supervise, manage and maintain a Youth Center and State Hospital for the mentally incompetent." (Emphasis added.)
 
 
 55
 The State Board of Education is similarly within the State Department of Elementary and Secondary Education, and shares its immunity. Section 5 of the Omnibus State Reorganization Act of 1974, supra, 3A Mo.Ann.Stat., App. B (Vernon's) (Supp.1981); 11 Mo.Ann.Stat. § 161.012 (Vernon's) (1959).
 
 
 56
 A similar analysis applies to officials of these departments sued in their official capacity. To impute liability to these officials is not to impugn any particular officeholder, but rather the office itself. Nevels v. Hanlon, 656 F.2d 372, 377 n.7 (8th Cir. 1981), quoting Arthur v. Nyquist, 573 F.2d 134 (2d Cir. 1978); see also Edelman v. Jordan, supra, 415 U.S. at 663, 94 S.Ct. at 1355; Ford Motor Co. v. Department of Treasury, 323 U.S. 459, 463-64, 65 S.Ct. 347, 350-51, 89 L.Ed. 389 (1945).
 
 B. Waiver
 
 57
 Appellant argues in the alternative that such immunity as would ordinarily pertain has here been abrogated by Congress in passing the Education Act, and by the State of Missouri in accepting federal funds under the Act. Appellant correctly points out that Congress may abrogate such eleventh amendment immunity as would otherwise apply under § 5 of the fourteenth amendment. Fitzpatrick v. Bitzer, 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976).
 
 
 58
 Abrogation of the states' immunity, however, will not be found in the absence of express, formal abrogation or persuasive legislative history. Quern v. Jordan, 440 U.S. 332, 345 & n.16, 99 S.Ct. 1139, 1147 & n.16, 39 L.Ed.2d 358 (1979). Assuming arguendo that the Education Act was passed pursuant to the fourteenth amendment, an intent to sweep away the immunity of the states cannot be inferred from this fact alone. Id. at 345, 99 S.Ct. at 1147. Appellant offers and we have found no evidence in the legislative history that the Education Act was intended by Congress to abrogate the states' immunity.
 
 
 59
 In addition to arguing Congressional abrogation, appellant contends that the state waived its immunity by participating in a program of federal assistance. The argument of waiver by participation, however, has been rejected by the Supreme Court. Florida Department of Health & Rehabilitative Services v. Florida Nursing Home Ass'n, 450 U.S. 147, 150, 101 S.Ct. 1032, 1034, 67 L.Ed.2d 132 (1981); Edelman v. Jordan, supra, 415 U.S. at 673, 94 S.Ct. at 1360. Waiver of immunity by a state will be found "only where stated 'by the most express language or by such overwhelming implications from the text as (will) leave no room for any other reasonable construction.' " Florida Department of Health & Rehabilitative Services, supra, 450 U.S. at 150, 101 S.Ct. at 1034, quoting Edelman v. Jordan, supra, 415 U.S. at 673, 94 S.Ct. at 1360. Appellant's argument that defendants waived their eleventh amendment defense by filing a responsive pleading is also patently without merit. Edelman v. Jordan, supra, 415 U.S. at 677-78, 94 S.Ct. at 1362-63; Ford Motor Co. v. Department of Treasury, supra, 323 U.S. at 466-67, 65 S.Ct. at 351-52.
 
 
 60
 (C) Compensatory Services
 
 
 61
 Appellant's final argument for reaching the state defendants is that compensatory educational services, unlike the other damages sought, are prospective and equitable in nature. Prospective, equitable relief has long been recognized as an exception to eleventh amendment immunity. Ex Parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908); Edelman v. Jordan, supra, 415 U.S. at 664, 667-68, 94 S.Ct. at 1356, 1357-58. Such relief may be granted even when attended by fiscal consequences to the state. Id. at 667, 94 S.Ct. at 1357.
 
 
 62
 Often, as is the case here, the line between prospective and retrospective relief may not be bright. Id. Appellant seeks such compensatory services from the state as are necessary "to overcome the effects of any wrongful denial of special educational services." The eleventh amendment bars such services if they are a form of retroactive compensation "measured in terms of a monetary loss resulting from a past breach of legal duty." Edelman v. Jordan, supra, 415 U.S. at 668, 94 S.Ct. at 1358; Nevels v. Hanlon, supra, 656 F.2d at 377. On the other hand, the eleventh amendment is no bar if the relief appellant seeks can fairly be characterized as "a necessary consequence of compliance in the future with a substantive federal question determination." Edelman v. Jordan, supra, 415 U.S. at 668, 94 S.Ct. at 1358.
 
 
 63
 An award of tuition reimbursement would clearly be barred as an award of damages for past breach of legal duty under this test. Riley v. Ambach, 508 F.Supp. 1222, 1248 (E.D.N.Y.1980). We view the request for compensatory services as practically indistinguishable from a request for such reimbursement. Compensatory services, like the award of a money judgment, would be measurable against past educational deprivation. The expenditure of state monies to provide compensatory services would not, in other words, ensure "compliance in the future with a substantive federal question determination." Edelman v. Jordan, supra, 415 U.S. at 668, 94 S.Ct. at 1358 (emphasis added). We conclude that the eleventh amendment bars the award of such compensatory relief as appellant has requested. Cf. Campbell v. Talladega County Board of Education, supra, 518 F.Supp. at 56 (awarding a free and appropriate public education for two years past age twenty-one against County Board of Education and State Board of Education, without consideration of eleventh amendment); Henkin v. South Dakota Department of Social Services, 498 F.Supp. 659, 667-68 (D.S.D.1980) (holding in suit under Developmentally Disabled Assistance and Bill of Rights Act that eleventh amendment does not bar injunctive order requiring state to supply future payment to private facility in the amount of sum state would expend in in-state facility).
 
 
 64
 We affirm the dismissal on eleventh amendment grounds of all causes of action for damage relief asserted against the State of Missouri, its above-named departments and facilities, and officials of these departments sued in their official capacity.[11]
 
 IV. MOTION TO AMEND
 
 65
 The final issue before us involves the district court's denial of appellant's motions to amend her complaint. On June 30, 1980, approximately nine months after initiating this action, appellant moved to amend her request for relief to include "such sums of money which have been expended from her resources which were not her obligation to pay, but were the obligation of the State of Missouri and its various departments and agencies." On September 11, 1980 she filed an additional motion to add her father Clyde J. Miener as a party plaintiff, asserting that Clyde J. Miener had authorized payments of insurance benefits for education-related services. These motions were made after the parties entered into a partial stipulation of settlement as to appellant's educational placement and after the district court had dismissed all claims for damages under the federal statutes and § 1983.
 
 
 66
 Since Fed.R.Civ.P. 15(a) provides that leave to amend shall be "freely given," we are always concerned with reasons for denial of proposed amendments. Defendants suggest one such reason. They state that appellant withheld a known claim and asserted it only after coaxing defendants into settlement on the basis of stated claims.
 
 
 67
 This argument is facially appealing. It may be observed, however, that appellant's proposed amendments amounted to little more than an amplification of previously alleged claims but with an assertion of additional damages. Considering the late dates of the amendments, one may suspect that the district court refused to allow amendment in part because the court had already tentatively concluded, on grounds which we now reverse, that appellant had no cause of action for damages. In any case, given the limited nature of the amendments sought, it is urged that it was an abuse of discretion to refuse leave to amend. Harkless v. Sweeny Independent School District, 554 F.2d 1353, 1359 (5th Cir.), cert. denied, 434 U.S. 966, 98 S.Ct. 507, 54 L.Ed.2d 452 (1977); R.E.B., Inc. v. Ralston Purina Co., 525 F.2d 749, 751-52 (10th Cir. 1975).
 
 
 68
 In light of proceedings subsequent to the action complained of and of the necessity of further proceedings on remand, we find it unnecessary to decide whether it was error to refuse leave to amend. We hold only that such refusal shall be considered as without prejudice to such future efforts to amend as may be appropriate on remand.
 
 
 69
 In sum, we affirm on eleventh amendment grounds the dismissal of all causes of action for damage relief and the request for compensatory services as asserted against the State of Missouri; the Missouri Department of Elementary and Secondary Education; the Missouri Department of Mental Health; the St. Louis State School Hospital and its Youth Center; the Missouri State Board of Education; and officials of these entities who are sued in their official capacity.
 
 
 70
 Our dismissal on eleventh amendment grounds of defendants Twiehaus and Fujita is limited to claims asserted against these defendants in their official capacity. Insofar as appellant asserts a cause of action under the Rehabilitation Act against these officials in their individual capacity, and insofar as the district court may permit appellant to revive against these defendants individually her pendent state claim, the eleventh amendment presents no bar.
 
 
 71
 We similarly conclude that as to the Special School District of St. Louis County, its Board of Education, and its officials, the eleventh amendment presents no bar to damage relief. We accordingly reverse the dismissal of appellant's cause of action for damages under the Rehabilitation Act against these defendants.
 
 
 72
 We also reverse the dismissal of appellant's § 1983 cause of action as asserted against the various Special School District defendants. This claim is remanded for the district court's reconsideration in light of Thiboutot and in light of the questions enumerated in our discussion.
 
 
 73
 We affirm the district court's dismissal of appellant's claim to damages under the Education Act on the ground that the Act does not provide a general cause of action for damages.
 
 
 74
 Finally, we affirm as without prejudice the district court's denial of leave to amend and hold that appellant may seek to amend her complaint to assert additional damages and to add Clyde Miener as a party plaintiff, insofar as these amendments pertain to the causes of action and defendants who remain in the case. Appellant may otherwise be permitted to amend as justice may require.
 
 
 
 [1]
 Appellant also asserted a pendent state tort claim which is not here at issue
 
 
 [2]
 Most of the issues on appeal arise from an order and memorandum opinion dated January 25, 1980, published at 498 F.Supp. 944 (E.D.Mo.1980). The remaining issues involve an order and memorandum opinion dated September 19, 1980, published at 498 F.Supp. 949 (E.D.Mo.1980)
 
 
 [3]
 In reviewing the granting of defendants' motion to dismiss, we view the complaint in the light most favorable to the plaintiff, Jackson Sawmill Co. v. United States, 580 F.2d 302, 306 (8th Cir. 1978), cert. denied, 439 U.S. 1070, 99 S.Ct. 839, 59 L.Ed.2d 35 (1979), and take its allegations as true. Park View Heights Corp. v. City of Black Jack, 467 F.2d 1208 (8th Cir. 1972)
 
 
 [4]
 The Supreme Court has expressly declined to decide whether private action can be implied under Section 504. Southeastern Community College v. Davis, 442 U.S. 397, 404-05 n.5, 99 S.Ct. 2361, 2366 n.5, 60 L.Ed.2d 980 (1979). But see Campbell v. Kruse, 434 U.S. 808, 98 S.Ct. 38, 54 L.Ed.2d 65 (1977), in which the Court vacated and remanded a district court decision that partial tuition grants to handicapped children denied equal protection. The Court directed the district court to decide the case based on Section 504, thus suggesting that a private right of action exists under the statute
 The Court has also refined the threshold question of the Cort test, which asks whether the statute was enacted for the benefit of a special class of which the plaintiff is a member. Cort v. Ash, 422 U.S. 66, 78, 95 S.Ct. 2080, 2087, 45 L.Ed.2d 26 (1975). Under this test, a private cause of action will be readily found "where the language of the statute explicitly confer(s) a right directly on a class of persons that include(s) the plaintiff." Universities Research Ass'n v. Coutu, 450 U.S. 754, 771, 101 S.Ct. 1451, 1462, 67 L.Ed.2d 662 (1981), quoting Cannon v. University of Chicago, 441 U.S. 677, 690 n.13, 99 S.Ct. 1946, 1954 n.13, 60 L.Ed.2d 560 (1979). There is less reason to infer a private remedy if Congress has framed the statute as "a general prohibition or a command to a federal agency." Id.
 Section 504 of the Rehabilitation Act is drafted with an unmistakable focus on the benefited class of handicapped persons, providing:
 No otherwise qualified handicapped individual in the United States, as defined in section 706(7) of this title, shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by an Executive agency or by the United States Postal Service.
 29 U.S.C. § 794. We conclude that the implication of a cause of action under § 504 is, if anything, bolstered by the Supreme Court's refinement of the Cort test.
 Finally, we are not persuaded to reach a different conclusion by the case of Pennhurst State School & Hospital v. Halderman, 451 U.S. 1, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1981), in which the Supreme Court held that a statute enacted pursuant to the Spending Power alone did not create substantive rights for disabled persons because new legal duties were not declared through clearly imposed conditions rather than mere precatory language. Id. 101 S.Ct. at 1540, 1543-45. At least one court has thought the Pennhurst analysis should apply to determine whether § 504 imposes an obligation on a state such as can be enforced through a private cause of action. Tatro v. Texas, 516 F.Supp. 968, 984 (N.D.Tex.1981). We conclude to the contrary that Pennhurst is inapplicable. Accord, Pushkin v. Regents of the University of Colorado, 658 F.2d 1372 at 1380-1381 (10th Cir. 1981). We note without deciding that § 504 at least arguably rests not on Congress's Spending Power but on Congress's power to secure the guarantees of the fourteenth amendment. See Comment, "Employment Discrimination Against the Handicapped: Can Trageser Repeal the Private Right of Action?" 54 N.Y.U.L.Rev. 1173, 1174 & nn.5-8 (1979) (and citations therein). Moreover, nondiscrimination against handicapped persons is an undisputed condition for the receipt of federal funding. In sum, the analysis in Pennhurst is simply irrelevant to determining a § 504 cause of action. Cf. Lieberman v. Univ. of Chicago, 660 F.2d 1185 at 1189-1191 (7th Cir. 1981) (Swygert, Sr., J., dissenting) (reaching same conclusion as to Title IX).
 
 
 [5]
 The incorporation of Title VI remedies occurred by amendment of the Rehabilitation Act in 1978. A new § 505 was added to provide in part:
 The remedies, procedures, and rights set forth in Title VI of the Civil Rights Act of 1964 shall be available to any person aggrieved by any act or failure to act by any recipient of Federal assistance or Federal provider of such assistance under section 504 (29 U.S.C. § 794) of this Act.
 Pub.L. 95-602, 92 Stat. 2955, 2982 (1978), codified as 29 U.S.C. § 794a(a)(2).
 
 
 [6]
 Section 1983 is remedial in nature, and does not in itself provide for any rights, substantive or otherwise. Chapman v. Houston Welfare Rights Organization, 441 U.S. 600, 99 S.Ct. 1905, 60 L.Ed.2d 508 (1979). Section 1983 merely "ensure(s) that an individual ha(s) a cause of action for violations of the Constitution," id. at 617, 99 S.Ct. at 1915, and "authorizes a cause of action based on the deprivation of civil rights guaranteed by other acts of Congress." Id. at 618, 99 S.Ct. at 1916. While Thiboutot makes explicit that a § 1983 cause of action extends to cover statutory violations, this ruling does not change the fact that § 1983 itself creates no substantive rights. A § 1983 claim presumably must fail if the underlying statute does not create substantive rights. See Pennhurst State School & Hospital v. Halderman, supra, 451 U.S. 1, 101 S.Ct. 1531, 67 L.Ed.2d 694 (Developmentally Disabled Assistance and Bill of Rights Act did not in § 111 create substantive rights)
 
 
 [7]
 One aspect of this inquiry is whether exhaustion of administrative remedies can save appellant from a ruling that the statutory remedies are exclusive. See Tatro v. Texas, supra, 516 F.Supp. at 968 (holding that the Education Act does not foreclose a § 1983 suit provided administrative remedies are exhausted)
 
 
 [8]
 We assume arguendo, without deciding, that Transamerica may shift to the party proposing the remedy the burden of proving that Congress intended the requested relief in addition to the express provision of other statutory remedies. See also Securities Investor Protection Corp. v. Barbour, 421 U.S. 412, 419, 95 S.Ct. 1733, 1738, 44 L.Ed.2d 263 (1975), citing Nat'l Railroad Passenger Corp. v. Nat'l Ass'n of Railroad Passengers, 414 U.S. 453, 458, 94 S.Ct. 690, 693, 38 L.Ed.2d 646 (1974); Lieberman v. Univ. of Chicago, supra, 660 F.2d 1185 at 1187 n.4, 1193 (7th Cir. 1981) (noting some inconsistency of Bell v. Hood and Transamerica). Here, we find that appellant can discharge that burden
 
 
 [9]
 In reaching this conclusion, we have examined the issue of damages in the closely analogous contexts of Title VI and Title IX. HHS's final regulations implementing § 504, see 45 C.F.R. § 84.61 (1981), adopt the same procedures as are used to enforce Title VI and 20 U.S.C. § 1681 as part of Title IX. See 45 C.F.R. § 86.71 (1979)
 The analogy to these statutes is of little help because judicial thought as to damages under Title IX and Title VI is divided. E.g., Lieberman v. University of Chicago, supra, 660 F.2d 1185 (7th Cir. 1981) (Title IX); Guardians Ass'n of New York City v. Civil Serv. Comm'n, 633 F.2d 232 (2d Cir. 1980) (Title VI), cert. granted, --- U.S. ----, 102 S.Ct. 997, 71 L.Ed.2d --- (1982) and petition for cert. filed, 50 U.S.L.W. 3157 (Aug. 31, 1981) (No. 81-432). (Title VI). The diversity of views expressed in these cases convinces us that we cannot resolve the damage issue by analogy to sister statutes. Cf. Valentine v. Smith, 654 F.2d 503, 512 (8th Cir. 1981); Chambers v. Omaha Public School Dist., 536 F.2d 222, 225 n.2 (8th Cir. 1976) (issue of damages under Title VI is not resolved in this circuit).
 
 
 [10]
 Case law is divided on the issue of exhaustion as a prerequisite to a § 504 suit
 Must exhaust: Groshong v. Independent School Dist., Civ. No. 3-77-376 (D.Minn. Nov. 13, 1980); Stubbs v. Kline, 463 F.Supp. 110, 117 (W.D.Pa.1978); Doe v. New York Univ., 442 F.Supp. 522 (S.D.N.Y.1978); Crawford v. Univ. of North Carolina, 440 F.Supp. 1047, 1058 (M.D.N.C.1977); NAACP v. Wilmington Medical Center, 426 F.Supp. 919 (D.Del.1977).
 Exhaustion rejected: Pushkin v. Regents of the Univ. of Colorado, supra, 658 F.2d 1372 at 1381 (10th Cir. 1981); Kling v. County of Los Angeles, 633 F.2d 876, 879 (9th Cir. 1980); Camenisch v. Univ. of Texas, 616 F.2d 127, 133-36 (5th Cir. 1980), vacated on other grounds, 451 U.S. 390, 101 S.Ct. 1830, 68 L.Ed.2d 175 (1981); Riley v. Ambach, 508 F.Supp. 1222, 1234-35 (E.D.N.Y.1980); Lestrange v. Consolidated Rail Corp., 501 F.Supp. 964, 969 (M.D.Pa.1980); Patton v. Dumpson, 498 F.Supp. 933, 939-41 (S.D.N.Y.1980); Medley v. Ginsberg, 492 F.Supp. 1294, 1305-07 (S.D.W.Va.1980); Whitaker v. Bd. of High Educ., 461 F.Supp. 99, 106-09 (E.D.N.Y.1978); Michigan Paralyzed Veterans v. Coleman, 451 F.Supp. 7 (E.D.Mich.1977).
 See also Cannon v. Univ. of Chicago, supra, 441 U.S. at 706 n.41, 99 S.Ct. at 1962 n.41 (individual suits are appropriate in advance of exhaustion in the analogous context of Title IX); Rosado v. Wyman, 397 U.S. 397, 406, 90 S.Ct. 1207, 1214, 25 L.Ed.2d 442 (1970) (principle of exhaustion of administrative remedies and doctrine of primary jurisdiction are not applicable where petitioners do not seek review of administrative ruling and could not participate in HEW review). Several courts have found Cannon dispositive as to exhaustion under § 504. Pushkin v. Regents of the Univ. of Colorado, supra, 658 F.2d 1372 at 1381; Kling v. County of Los Angeles, supra, 633 F.2d at 879. We are swayed by the fact that HEW has argued as amicus curiae that exhaustion should not be required as a prerequisite to private litigation under § 504. Patton v. Dumpson, supra, 498 F.Supp. at 939.
 
 
 [11]
 Defendants John Twiehaus, Acting Superintendent of the St. Louis State Hospital, and Dr. Milton Fujita, former Medical Director of the Youth Center of the St. Louis State Hospital, are dismissed insofar as they are sued in their official capacities. The eleventh amendment does not prevent entry of an award of damages against these officials in their individual capacities. Scheuer v. Rhodes, 416 U.S. 232, 237-38, 94 S.Ct. 1683, 1686-87, 40 L.Ed.2d 90 (1974). Given our revival of some of appellant's federal statutory causes of action, the district court may wish to reconsider the dismissal of the pendent state tort claim against these two defendants