713 F.2d 1229
 32 Fair Empl.Prac.Cas. (BNA) 829,
32 Empl. Prac. Dec. P 33,763
Curtis FOULKS, Jr., Plaintiff-Appellee, Cross-Appellant,
v.
OHIO DEPARTMENT OF REHABILITATION AND CORRECTION, Adult
Parole Authority, and Morris DeForge, and John R.
Himmelright, Defendants-Appellants,
Cross-Appellees.
 Nos. 81-3315, 81-3316.
 United States Court of Appeals,
Sixth Circuit.
 Argued Jan. 13, 1983.
Decided Aug. 4, 1983.
 
 Allen P. Adler (argued), Michael Flax, Asst. Attys. Gen., Columbus, Ohio, for defendants-appellants, cross-appellees.
 Geoffrey H. Davis (argued), Toledo, Ohio, for plaintiff-appellee, cross-appellant.
 Before KEITH and MERRITT, Circuit Judges, BROWN, Senior Circuit Judge.
 MERRITT, Circuit Judge.
 
 
 1
 In this employment discrimination case, the defendants appeal a decision by Judge Walinski of the Northern District of Ohio awarding plaintiff Curtis Foulks, Jr. damages and attorney's fees against the state agency that employed him and against his former supervisors, under the Civil Rights Act of 1866, 42 U.S.C. § 1981. We reverse and remand for further proceedings.[1]
 
 I.
 
 2
 On February 21, 1971, Curtis Foulks was hired as a Parole Officer (P.O.) I at the Lima, Ohio, office of the Adult Parole Authority (APA), a division of the Ohio Department of Rehabilitation and Correction. Although Foulks' five months of substitute teaching experience fell short of the one year's related work experience required for employment as a P.O. II--the classification immediately superior to Foulks' position--he claims that defendants' failure to hire him as a P.O. II was racially motivated.[2] Plaintiff also claims that his supervisors subjected him to harassment, which included racial epithets, unreasonable rejection of his probation reports, exclusion from certain seminars, and arbitrary restriction of his graduate study course load. In the fall of 1971, Foulks was temporarily discharged for approximately seven weeks, due to lack of funding for P.O. I positions. He contends that, had he been hired as a P.O. II (or had he been promoted to that level), he would not have suffered the layoff. He also alleges that defendants continued to harass him after his reinstatement, and that this harassment led ultimately to his resignation in September, 1972. Finally, Foulks claims that defendants frustrated his attempt to secure employment as a Probation Officer in the Lucas County, Ohio, Adult Probation Department by writing him an unfavorable recommendation motivated by racial prejudice.
 
 
 3
 The defendants, on the other hand, maintain that plaintiff did not experience racial discrimination at APA. In addition to other evidence, they cite the testimony of Spencer Turner, defendant DeForge's black supervisor and an active member of the Urban League and the NAACP. Contradicting plaintiff's allegations, Mr. Turner testified that he did not consider DeForge racially biased, and added that he personally had not encountered any racial discrimination in his 31 years at APA.
 
 
 4
 On July 18, 1972, Foulks filed a complaint with the Ohio Civil Rights Commission (OCRC), claiming that the APA had discriminated against him because of his race by hiring him at a level below his qualifications, by denying him promotion, and by harassing him. Following a hearing held nearly four years later, the OCRC found that the APA had discriminated against Foulks "through disparate treatment and harassment by his supervisor and through a denial of promotion." Department of Rehabilitation and Correction, Adult Parole Authority v. OCRC, No. 80AP-287, slip op. at 2 (Franklin County Ct.App.1981). The OCRC entered an order on November 22, 1978, directing the APA to pay Foulks retroactively the difference between P.O. II and P.O. I salaries for July 14, 1972, to September 15, 1972, the period during which--according to the Commission--Foulks should have enjoyed P.O. II status. This damage award amounted to a total of approximately $125. The APA appealed, and the decision was upheld twice in state court, first by the Franklin County Court of Common Pleas on March 19, 1980, then by the Franklin County Court of Appeals on May 28, 1981. Department of Rehabilitation and Correction, Adult Parole Authority, supra. Litigation at the state level finally ended when the Ohio Supreme Court dismissed the APA's last appeal for want of a substantial constitutional question on September 16, 1981.
 
 
 5
 By this time, plaintiff was also pursuing federal remedies. On February 20, 1976, he filed a complaint in the court below, charging the APA with violation of 42 U.S.C. § 1981, as described above.[3] On March 31, 1977, the District Court denied defendants' Motion to Dismiss, which called the court's attention to the concurrent state law proceedings and requested dismissal based on plaintiff's failure to exhaust state remedies or, in the alternative, on application of the abstention doctrine.
 
 
 6
 On appeal, defendants have recast these dismissal arguments under the related doctrines of res judicata and collateral estoppel,[4] contending that plaintiff's pursuit of his state remedies in the OCRC and state courts precludes further litigation of his employment discrimination claim in federal court. Because we find that the eleventh amendment deprived the District Court of jurisdiction over the APA (see Part II, infra ), it is unnecessary for us to consider the question whether preclusion concepts apply to an employment discrimination claim first advanced under state civil rights laws and then litigated under § 1981 in federal court.
 
 
 7
 Regarding defendants DeForge and Himmelright, it is clear that preclusion does not apply, since neither of these individuals was a defendant in Foulks' OCRC and state court actions. Although the state civil rights statute, OHIO REV. CODE ANN. § 4112.02 (Baldwin) proscribes "discriminatory practice" by an "employer," supervisors--such as DeForge and Himmelright--do not fall within the scope of that term. See Sowers v. OCRC, 20 Ohio Misc. 115, 252 N.E.2d 463 (1969) (school board member was not an "employer" under the Ohio civil rights statute). Thus, DeForge and Himmelright could not have been parties to the state proceeding. They cannot invoke res judicata because the Ohio judgment did not encompass any claim against them. On the other hand, plaintiff cannot extend the OCRC liability finding to them through collateral estoppel because DeForge and Himmelright never had a "full and fair opportunity" to litigate that issue. See Kremer v. Chemical Constr. Corp., 456 U.S. 461, 481, 102 S.Ct. 1883, 1897, 72 L.Ed.2d 262, 280 (1982); Montana v. United States, 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979); Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation, 402 U.S. 313, 328-29, 91 S.Ct. 1434, 1442-43, 28 L.Ed.2d 788 (1971); Restatement (Second) of Judgments § 28, Comment j (1982).
 
 II.
 
 8
 The eleventh amendment of the U.S. Constitution provides:
 
 
 9
 [T]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against any one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State, U.S. CONST. amend. XI.
 
 
 10
 In Hans v. Louisiana, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1889), the Supreme Court held that sovereign immunity bars a citizen from suing his own state under the Constitution and laws of the United States, even though the precise language of the eleventh amendment does not mention such a suit. However, the courts have permitted suits challenging the legality of state action when the plaintiff names as defendant the state officer or agency instead of the state itself. In Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), the Court recognized an equitable cause of action against state officers in their individual capacities for violations of constitutional rights. The Young Court created the fiction that unconstitutional action strips the state officer "of his official or representative character" and thus deprives him of the state's sovereign immunity. Id. at 159-60, 28 S.Ct. at 453-54.
 
 
 11
 The Supreme Court has recently restricted the scope of this exception. In Edelman v. Jordan, 415 U.S. 651, 677, 94 S.Ct. 1347, 1362, 39 L.Ed.2d 662 (1974), the Court limited the federal courts to providing "prospective injunctive relief" against state officials and barred any "retroactive award which requires the payment of funds from the state treasury."[5] See also Quern v. Jordan, 440 U.S. 332, 347, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979) (reaffirming Edelman holding that eleventh amendment limits federal courts to awarding prospective injunctive relief in § 1983 actions); Alabama v. Pugh, 438 U.S. 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978) (per curiam ); Sessions v. Rusk State Hospital, 648 F.2d 1066 (5th Cir.1981) (employment discrimination action under § 1981 barred by eleventh amendment); Martin v. University of Louisville, 541 F.2d 1171 (6th Cir.1976) (eleventh amendment applies where suit against state agency or officers is in essence one for recovery of money from state treasury).
 
 
 12
 In the instant case, the District Court awarded plaintiff damages and attorney's fees but did not order any injunctive relief. Entirely retrospective in nature, the court's order directs the defendants jointly to pay plaintiff a total of $9322.99 in damages and attorney's fees. Regarding the APA, this award violates the eleventh amendment prohibition against judgments to be paid out of the public fisc. Edelman v. Jordan, supra.
 
 
 13
 Plaintiff urges that suits under § 1981 should not be subject to the Edelman rule, noting that the Supreme Court permitted a backpay award against a state defendant in Fitzpatrick v. Bitzer, 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976), a Title VII employment discrimination case. In analyzing Title VII, the Fitzpatrick Court found clear evidence of "congressional intent to abrogate the immunity conferred by the Eleventh Amendment," id. at 451-52, 96 S.Ct. at 2669, and held that § 5 of the fourteenth amendment authorized Congress to carve out such an exception.[6] Plaintiff contends that the implementing clause of the thirteenth amendment also gave Congress the power to abrogate state sovereign immunity,[7] and that Congress invoked that power by promulgating the Civil Rights Act of 1866. But even if one assumes arguendo that plaintiff is correct to this point, the lack of evidence of a clear congressional purpose to use this power in § 1981 fatally undermines his position. See Employees v. Missouri Public Health Dep't., 411 U.S. 279, 283-85, 93 S.Ct. 1614, 1617-18, 36 L.Ed.2d 251 (1973). Whereas Congress amended Title VII in 1972 specifically to establish state liability for violations of the Civil Rights Act of 1964, see 42 U.S.C. § 2000e(a), (f); Fitzpatrick v. Bitzer, supra, 427 U.S. at 449 n. 2, 96 S.Ct. at 2668 n. 2 plaintiff has not presented us with any manifestation of a similar congressional intent regarding § 1981. "Congress, acting responsibly, would not be presumed to take such action silently." Employees, supra, 411 U.S. at 284-85, 93 S.Ct. at 2617-18.
 
 
 14
 The District Court's damage award against the APA must therefore be set aside. Moreover, because the District Court failed to award any injunctive relief against the state defendant, the APA cannot be held liable for any of plaintiff's attorney's fees.[8] This holding does not foreclose the District Court from awarding attorneys fees against individual defendants if plaintiff should prevail on remand (see part III, infra ).
 
 III.
 
 15
 The eleventh amendment does not prevent plaintiffs from bringing suits for money damages against state officials provided that the defendants are sued in their individual capacities. Scheuer v. Rhodes, 416 U.S. 232, 237-38, 94 S.Ct. 1683, 1686-87, 40 L.Ed.2d 90 (1974); Great Northern Life Ins. Co. v. Read, 322 U.S. 47, 50-51, 64 S.Ct. 873, 874-75, 88 L.Ed. 1121 (1944); In re Ayers, 123 U.S. 443, 500-01, 8 S.Ct. 164, 180, 31 L.Ed. 216 (1887). In such cases, "damages are payable by the officer, provided primary and remedial law gives the plaintiff a cause of action against the officer for the specific actions contested." L. Tribe, American Constitutional Law 132 (1978). Thus, plaintiff in the instant case could maintain a constitutional tort action against his former supervisors, Messrs. DeForge and Himmelright for any of their individual acts which constitute violations of Foulks' civil rights under § 1981.
 
 
 16
 Rule 52 of the Federal Rules of Civil Procedure provides that the district court in a bench trial "shall find the facts specially and state separately its conclusions of law thereon." Fed.R.Civ.P. 52(a). This rule is at least in part designed "to afford the appellate court a clear understanding of the ground or basis of the decision of the trial court." Snyder v. United States, 674 F.2d 1359 (10th Cir.1982).
 
 
 17
 The District Court's findings of fact and conclusions of law fail to provide us with a sufficient basis for review of the judgment after the elimination of the state defendant through sovereign immunity. The court's order assessing damages and attorney's fees extended to defendants DeForge and Himmelright as well as to the APA. Rather than defining the degree of each defendant's liability, Judge Walinski made a general finding that the plaintiff "should and does prevail in his action under 42 U.S.C. § 1981." Foulks v. Ohio Dep't of Corrections, No. 76-57 (W.D.Ohio 1980). This conclusion was based on numerous findings of fact contained in the same order involving acts committed by persons other than these two defendants. It was the totality of all these acts that appears to be the basis of the award against the APA. Of those facts, only the following related specifically to defendants DeForge and Himmelright:
 
 
 18
 The evidence shows that Defendant DeForge repeatedly referred to the plaintiff as "that black fox" and "nigger."... DeForge would also frequently require plaintiff to rewrite his reports although his objections were vague and no similar requirement was imposed on the other white probation officers under his supervision.
 
 
 19
 * * *
 
 
 20
 Plaintiff applied for a job with the Lucas County Adult Probation Department in the spring of 1973. Defendant John Himmelright responded negatively to a request for a recommendation by saying that plaintiff was antagonistic and a troublemaker who displayed a poor relationship with his fellow workers and was generally hard to get along with. A subsequent investigation by J.D. Rietzke of that Lucas County agency revealed that the defendant's comments were racially motivated and false. In fact, two of plaintiff's co-workers as well as his regional supervisor in the state office gave him outstanding recommendations.
 
 
 21
 The Court finds that the defendant's remarks were racially motivated and were responsible for plaintiff's failure to get this job on this occasion, although he did later work for the Lucas County Probation Department.
 
 
 22
 Id. Thus, the District Court apparently did not hold Himmelright and DeForge individually responsible for all of the disparate treatment Foulks experienced. It is impossible for us to determine what injury and damage Judge Walinski found was caused by DeForge's acts and what injury and damage was caused by Himmelright's and why they are jointly and severally liable. We are also uncertain as to the precise dimensions of any § 1981 cause of action that plaintiff might retain against DeForge and Himmelright after the APA is dismissed as party defendant.
 
 
 23
 We therefore remand the case and request that the District Court reconsider its findings of fact and conclusions of law and to state specifically the basis for relief against these two remaining defendants and the amount of damages, if any, suffered by reason of the acts of each. This requires the District Court--with the assistance of counsel for the parties--to define the elements of the statutory tort or torts claimed to have been committed under § 1981, and then to apply the elements so defined to the facts of the case. If the court does find such a cause of action, it should then reassess the damage award in light of its revised conclusions of law and findings of fact.
 
 
 24
 The judgment of the District Court is reversed and remanded for further proceedings consistent with this opinion.
 
 
 25
 KEITH, Circuit Judge, dissenting.
 
 
 26
 Over ten years ago, the plaintiff Curtis Foulks was the victim of racial discrimination. His claims of racial discrimination have been sustained by the Ohio Civil Rights Commission, the Franklin County Court of Common Pleas and the Ohio Court of Appeals in Franklin County. The district court below also found discrimination and awarded damages and costs, including attorney's fees. Today, the majority remands the case for reconsideration of the findings of fact and conclusions of law with respect to the individual defendants, thus further delaying redress of the wrongs plaintiff has suffered. To deny prompt relief gives credence to the age-old maxim, justice delayed is justice denied. I respectfully dissent.
 
 I.
 
 27
 The majority concludes that the Ohio Department of Rehabilitation and Correction, Adult Parole Authority (APA) cannot be sued for money damages because of the Eleventh Amendment. I agree.
 
 
 28
 Section 1981 was derived from the Civil Rights Act of 1866 (Act). The intended purpose of Section 1981 was to uproot the institution of slavery and eradicate its badges and incidents. Long v. Ford Motor Company, 496 F.2d 500, 504 (6th Cir.1974). See Jones v. Alfred H. Mayer Co., 392 U.S. 409, 88 S.Ct. 2186, 20 L.Ed.2d 1189 (1968). It is designed as "an equalizing provision to ensure that rights do not vary according to race." Long, 496 F.2d at 505. As Senator Trumbull, the sponsor of the bill, stated:
 
 
 29
 [The Thirteenth Amendment] declared that all persons in the United States should be free. This measure is intended to give effect to that declaration and secure to all persons within the United States practical freedom. There is very little importance in the general declaration of abstract truths and principles unless they can be carried into effect, unless the persons who are to be affected by them have some means of availing themselves of their benefits.
 
 
 30
 Jones v. Alfred H. Mayer Co., 392 U.S. at 431-2, 88 S.Ct. at 2199 (1968) (quoting Cong. Globe, 39th Cong., 1st Sess., 43, 474).
 
 
 31
 Given the Act's purpose to broadly implement the Thirteenth Amendment, it is reasonable to conclude that Congress meant to abrogate the States' sovereign immunity to the extent necessary to remedy state-sponsored discrimination. In fact, several well-reasoned Supreme Court dissents have argued that Section 1981 was meant to reach only discriminatory state action. Runyon v. McCrary, 427 U.S. 160, 192, 96 S.Ct. 2586, 2605, 49 L.Ed.2d 415 (1976) (White, J., dissenting); Jones v. Alfred H. Mayer Co., 392 U.S. at 449, 88 S.Ct. at 2208 (Harlan, J., dissenting). Unfortunately, Section 1981 does not explicitly and by clear language indicate on its face an intent to sweep away the immunity of the States; nor does it show that Congress considered and firmly decided to abolish the Eleventh Amendment immunity. Quern v. Jordan, 440 U.S. 332, 345, 99 S.Ct. 1139, 1147, 59 L.Ed.2d 358 (1979). Hence, Section 1981 cannot meet the Supreme Court's rigid criterion for finding Congressional intent to abrogate sovereign immunity. Accordingly, I concur in the dismissal of the APA as a party.
 
 II.
 
 32
 The majority overturns the district court's award of attorney's fees against the APA because no injunctive relief was awarded against the APA. However, attorney's fees could still be awarded against the APA to the extent that defendants DeForge and Himmelright acted on behalf of the APA in discriminating against the plaintiff. This is clear from Hutto v. Finney, 437 U.S. 678, 692, 98 S.Ct. 2565, 2574, 57 L.Ed.2d 522 (1978), where the Court affirmed the entry of an award of attorney's fees to be paid out of the Arkansas State Department of Correction's budget because of the conduct of state officials. In this case, defendants DeForge and Himmelright acted in their official capacities on behalf of the APA. Attorney's fees can thus be imposed directly on the APA pursuant to Hutto v. Finney, supra. I dissent from any suggestion in the majority opinion to the contrary.
 
 III.
 
 33
 I am at a loss to explain why the majority remands this case. The district court identified specific acts of discrimination by defendants DeForge and Himmelright who were APA officers and the plaintiff's supervisor. The district court assessed damages against DeForge, Himmelright and the APA jointly. No other defendants or possible defendants were named in the opinion below. Dismissal of the APA does not require reconsideration of the liability finding with respect to DeForge and Himmelright. Since liability has already been established, the district court's action should be limited to the apportionment of damages.
 
 
 34
 The majority's remand is particularly distressing because two independent bodies--the Ohio Civil Rights Commission and the United States District Court--have determined that the plaintiff was a victim of racial discrimination.
 
 
 35
 In an employment setting, a violation of Section 1981 exists when an employer places more stringent requirements on employees because of their race. Long, 496 F.2d at 504. In the present context, such a violation indisputedly occurred when DeForge held the plaintiff to more stringent standards by requiring him to constantly rewrite reports though no similar demands were made of others. Moreover, DeForge's disparate treatment of the plaintiff was evidenced by his constant denial of plaintiff's requests to attend training conferences, while the requests of others were routinely granted.
 
 
 36
 Section 1981 also forbids the degradation of individuals because of their race. In addition to denying Mr. Foulks' request to attend training seminars, the defendants created an atmosphere charged with racial tension. DeForge openly discussed his lack of confidence in Mr. Foulks' work, and expressed his belief that Black people are liars and cannot be trusted. His disdain for the race further resounds in his use of the word "Nigger" and his reference to Mr. Foulks as a "Black Fox" and a "Black Gable". In the midst of this racially charged atmosphere, DeForge allegedly told Mr. Foulks, "My daughter was raped by a Black man, and I know how you feel."
 
 
 37
 Moreover, Mr. Foulks' professional advancement was greatly hindered by the manifestations of the defendants' prejudice. Mr. Foulks testified that his professional activities were largely circumscribed by DeForge's efforts to minimize his contact with White counterparts. After continuously being denied promotions, Mr. Foulks sought employment elsewhere. His efforts in this regard were effectively thwarted when Mr. Himmelright responded negatively to a request for a recommendation. According to Mr. Himmelright, Mr. Foulks was antagonistic and a troublemaker who displayed a poor relationship with his fellow workers and was generally hard to get along with. As the court below correctly noted, a subsequent investigation revealed that the comments were false and racially motivated. In fact, Mr. Foulks had received several outstanding recommendations, including one from his regional supervisor in the state office.
 
 
 38
 In this case, the record clearly reflects that DeForge subjected the plaintiff to dissimilar treatment. The question the district court was called upon to answer was whether such disparate treatment was motivated by racial animus towards Black people. The district court concluded that it was so motivated. The fact that DeForge called a Black person a Nigger in front of an APA employee is probative of racial animosity and disparate treatment. See Rowe v. Cleveland Pneumatic Co., Numerical Control, 690 F.2d 88, 97 (6th Cir.1982). While there is nothing per se illegal about calling someone a Nigger, Cracker, Spic, Wop or Kike the use of these despicable terms is morally reprehensible, and this court should not in any way sanction their use.
 
 
 39
 I have carefully considered the majority opinion remanding this case for yet another discrimination determination. There is no justification for it. The court's decision today perpetuates rather than rectifies a long-standing injustice.
 
 
 
 [1]
 This disposition makes unnecessary consideration of plaintiff's cross appeal regarding the size of the District Court's damage and attorney's fees awards
 
 
 [2]
 Foulks notes that the one year of related work experience required for P.O. II status was occasionally waived by defendants, and the record shows that the requirement was in fact waived for a white applicant in September, 1971
 
 
 [3]
 The original complaint also named the OCRC and some 29 state officials as defendants. Before trial, the District Court dismissed the OCRC and all but two of the individual defendants. The court also dismissed claims plaintiff had advanced under sections 1983 and 1985(3) of Title 42, and plaintiff has not appealed these rulings
 
 
 [4]
 Although the original Motion to Dismiss does not employ the terms "res judicata" or "collateral estoppel," plaintiff conceded at oral argument that defendants had raised the issue below
 
 
 [5]
 Thus, although the plaintiffs in Edelman succeeded in showing that the Illinois officials charged with administering the federal-state programs of Aid to the Aged, Blind, or Disabled, had not complied with federal law, the Supreme Court disallowed the awarding of retroactive benefits as an encroachment on sovereign immunity. The Court also refused to extend the Young fiction to monetary awards, observing that "[t]hese funds will obviously not be paid out of the pocket of petitioner Edelman." Id. at 664, 94 S.Ct. at 1356
 
 
 [6]
 Section 5 of the fourteenth amendment reads as follows: "The Congress shall have power to enforce, by appropriate legislation, the provisions of this article."
 
 
 [7]
 This clause, section 2 of the thirteenth amendment, reads as follows: "Congress shall have power to enforce this article by appropriate legislation."
 
 
 [8]
 Plaintiff has not appealed the District Court's failure to award injunctive relief against the APA. Accordingly, we do not have that question before us in this appeal