Richard A. WOODS, Plaintiff,

v.

STATE OF MISSOURI DEPARTMENT OF MENTAL HEALTH, KANSAS CITY REGIONAL DIAGNOSTIC CENTER, Defendant.

No. 83–0838–CV–W–1.

United States District Court, W.D. Missouri, W.D.

Feb. 24, 1984.

John J. Yates, and Joseph A. Colussi, Gage & Tucker, Kansas City, Mo., for plaintiff.

John Ashcroft, Atty. Gen., Robert Presson, Asst. Atty. Gen., Jefferson City, Mo., Robert E. Jones, K.C. Regional Center, Dept. of Mental Health, Kansas City, Mo., for defendant.

## ORDER

JOHN W. OLIVER, Senior District Judge.

### I.

This is an action brought under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.,* and the Civil Rights Acts of 1866 and 1871, 42 U.S.C. §§ 1981 and 1983. Currently pending in this case are defendant's motion to dismiss pursuant to Rule 12(b) of the Federal Rules of Civil Procedure and plaintiff's motion for leave to file a second amended complaint pursuant to Rule 15(a) of the Federal Rules of Civil Procedure.

### II.

Defendant raises three separate grounds in its motion to dismiss. First, that plain-

tiff's second cause of action should be dismissed for failure to state a claim upon which relief can be granted because the Eleventh Amendment bars suit under 42 U.S.C. §§ 1981 and 1983 against the State of Missouri. Second, that plaintiff's first cause of action should be dismissed because plaintiff has failed to obtain a notice of right to sue from the Attorney General of the United States prior to the institution of this lawsuit as required by 42 U.S.C. § 2000e–5. Third, that this Court lacks jurisdiction to consider the allegations raised in paragraphs 7(a), 7(b) and 7(c) of the plaintiff's complaint because those allegations were not in plaintiff's charge filed with the Equal Employment Opportunity Commission. We will consider these three grounds in order.

### A. Eleventh Amendment

[1, 2] Defendant contends that defendant State of Missouri Department of Mental Health, as a state agency, is immune [1] from suit under 42 U.S.C. §§ 1981 and 1983 by virtue of the Eleventh Amendment.[2] Plaintiff in suggestions in opposition to defendant's motion to dismiss, does not dispute the State's contention. Plaintiff does, however, seek leave to amend his complaint by substituting Paul R. Ahr, Director of Department of Mental Health, and Max Mason, Director of the Kansas City Regional Center, for the Missouri Department of Mental Health as defendants in his cause of action under sections 1981 and 1983. In its reply, defendant, citing *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974) and *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714

(1908), states that the motion for leave to amend the complaint, if granted, would cure the Eleventh Amendment defect raised in defendant's motion to dismiss.

■ We conclude that plaintiff's motion for leave to amend his complaint should be granted. Rule 15(a) provides that leave to amend a complaint "shall be freely given when justice so requires." In this case, allowing the amendment would not result in prejudice to defendant but a denial would cause plaintiff significant hardship since his section 1981 and 1983 count would be dismissed. *See Buder v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 644 F.2d 690, 694–95 (8th Cir.1981). Plaintiff will therefore be granted leave to amend his complaint.

In Count II of his amended complaint, plaintiff prays judgment against defendants Ahr and Mason for damages in excess of $10,000.00 for violations of rights guaranteed to plaintiff by 42 U.S.C. §§ 1981 and 1983, and the First, Fifth, and Fourteenth Amendments to the United States Constitution, for reinstatement, for costs, including all appropriate attorney's fees and expenses as authorized by the provisions of 42 U.S.C. § 1988, and for such other relief as the Court may deem appropriate. In light of this prayer for relief, and defendant's original claim of Eleventh Amendment immunity, it is appropriate to briefly discuss the relief that actually would be available in this case under sections 1981, 1983 and 1988.

■ The Eleventh Amendment does not prevent plaintiffs from bringing suits for money damages against state officials pro-

---

**1.** Generally, a suit may not be maintained directly against the State itself, or against an agency or department of the State, unless the State has waived its sovereign immunity. *Florida Department of State v. Treasure Salvors, Inc.*, 458 U.S. 670, 102 S.Ct. 3304, 73 L.Ed.2d 1057 (1982); *Alabama v. Pugh*, 438 U.S. 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978). The Missouri Department of Mental Health shares the State's Eleventh Amendment immunity. *Miener v. State of Missouri*, 673 F.2d 969, 980–81 (8th Cir.1982).

**2.** The Eleventh Amendment provides:

The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

Although the Eleventh Amendment is not literally applicable since plaintiff is a citizen of Missouri, "it is established that an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." *Employees v. Department of Public Health & Welfare*, 411 U.S. 279, 280, 93 S.Ct. 1614, 1616, 36 L.Ed.2d 251 (1973).

vided that the defendants are sued in their individual capacities. *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). Damages would then be payable by the officer, not by the State, provided that plaintiff proved that the named individual defendant was personally responsible for the deprivation of plaintiff's federal rights. *Id.* at 237–38, 94 S.Ct. at 1686–87.

■■■■ In the more likely event that any award against Ahr and Mason would actually be paid by the State of Missouri, the Eleventh Amendment would bar a recovery of a retroactive monetary award. *Edelman v. Jordan, supra,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662. In determining whether a state official sued in his official capacity shares the Eleventh Amendment shield, "the key is who will pay for any judgment" rendered in favor of plaintiff. *Miener v. State of Missouri,* 673 F.2d 969, 980–81 (8th Cir.1982).

The Court in *Edelman v. Jordan,* made clear that in a suit under section 1983, an award of retroactive welfare benefits against a state for wrongful denial by state officials of previously accrued welfare benefits violated the Eleventh Amendment. The focus in that case was on whether the action was in essence one for recovery of money from the state, even though the State was not named as a defendant. The Court concluded that a section 1983 suit may be instituted against state officials but that a federal court's remedial power under the Eleventh Amendment is necessarily limited to prospective injunctive relief, and may not include a retroactive award which requires the payment of funds from the state treasury. 415 U.S. at 677, 94 S.Ct. at 1362.

In *Fitzpatrick v. Bitzer,* 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976), the Court was faced with the question of whether Title VII of the Civil Rights Act of 1964 could authorize, consistent with the Eleventh Amendment, an award of money damages in favor of a private individual against a state government found to have subjected that person to employment discrimination under that Title. The Court analyzed

the congressional authorization creating the Act and found that the Eleventh Amendment defense was being asserted in the context of legislation passed pursuant to Congress' authority under section 5 of the Fourteenth Amendment. Noting that the Fourteenth Amendment, as ratified by the states after the Civil War, clearly contemplates limitations on the state's authority and grants Congress the power to "enforce" the substantive provisions "by appropriate legislation," the Court concluded that Congress may, pursuant to the Fourteenth Amendment, provide for private suits against states or state officials as it did in the 1972 amendments to Title VII of the Civil Rights Act of 1964.

The Court again had to decide a conflict between the Eleventh Amendment and Civil Rights legislation in *Hutto v. Finney,* 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978), which presented the question whether states could be liable for attorney's fees pursuant to the Civil Rights Attorney's Fees Award Act of 1976, 42 U.S.C. § 1988. Applying the rule made clear in *Fitzpatrick v. Bitzer,* that Congress has plenary power to set aside the state's immunity from retroactive relief in order to enforce the Fourteenth Amendment, the Court determined that the legislative history of the Act showed a clear intention on the part of Congress to authorize attorney's fees as part of costs to a prevailing party against a state.

In *Quern v. Jordan,* 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979), the Court revisited the question of a federal court's remedial power under section 1983 in a suit against state officials. Unlike the statutes involved in *Fitzpatrick* and *Hutto,* the Court determined that section 1983 does not indicate on its face an intent to set aside the immunity of the States; nor does it have a history which shows that Congress considered and firmly decided to abolish the Eleventh Amendment immunity of the States. Thus, the Court reaffirmed its holding in *Edelman.*

■■■ It is therefore clear that, in the instant case, if plaintiff were to prevail on his

claim against defendants Ahr and Mason under section 1983, and if any damages would actually be paid by the State of Missouri, *Quern* and *Edelman* would bar the damage recovery. *See Miener v. State of Missouri, supra,* 673 F.2d 969 at 980–81 (8th Cir.1982); *Nevels v. Hanlon,* 656 F.2d 372, 377–78 (8th Cir.1981). Plaintiff would, however, be allowed appropriate prospective relief under section 1983 and attorney's fees as part of costs pursuant to section 1988.

There remains the question of how the foregoing discussion affects the relief available under section 1981. In *Taylor v. Jones,* 653 F.2d 1193 (8th Cir.1981), the Eighth Circuit stated that:

> It is also possible that the *Quern* and *Edelman* decisions, which analyzed the effect of section 1983 on the states' immunity to damage suits, are not controlling in a suit based on section 1981. The language, purpose and legislative history of section 1981 are not entirely comparable to that of section 1983; thus its effect and scope must be separately examined. 653 F.2d at 1205, n. 10 (citations omitted).

Section 1981 was originally derived from the Civil Rights Act of 1866. That Act was passed as a means to enforce the Thirteenth Amendment. Section 1983, on the other hand, has its roots in section 1 of the Ku Klux Klan Act of 1871 and was passed primarily to enforce the provisions of the Fourteenth Amendment. *Runyon v. McCrary,* 427 U.S. 160, 170, 96 S.Ct. 2586, 2594, 49 L.Ed.2d 415 (1976); *District of Columbia v. Carter,* 409 U.S. 418, 423, 93 S.Ct. 602, 605, 34 L.Ed.2d 613 (1972).

It is thus apparent that the wording of section 1981 as well as its legislative history must be separately analyzed to determine if there was a clear congressional intent to authorize an award of damages against states. At least two Courts of Appeals have determined that damage awards against states under section 1981 are barred by the Eleventh Amendment. *Foulks v. Ohio Dept. of Rehabilitation and Correction,* 713 F.2d 1229 (6th Cir.

1983); *Sessions v. Rusk State Hospital,* 648 F.2d 1066 (5th Cir. Unit A 1981).

We have examined the wording of the statute and its legislative history. Section 1981 does not "indicate on its face an intent to sweep away the immunity of the States; nor does it have a history which focuses directly on the question of state liability and which shows that Congress considered and firmly decided to abrogate the Eleventh Amendment immunity of the States." *Quern v. Jordan, supra,* 440 U.S. at 345, 99 S.Ct. at 1147. That section therefore does not meet the Supreme Court's rigid criterion for finding Congressional intent to abolish State immunity. We conclude that a recovery of damages against a state under Section 1981 would be barred by the Eleventh Amendment but that appropriate prospective relief would be available under that section as well as attorney's fees as part of costs under section 1988 if plaintiff prevailed on the merits.

### B. Title VII: Right to Sue Letter

The Eleventh Amendment does not bar plaintiff's Title VII claim against defendant because, as stated above, Congress may provide for private suits against states, state agencies or state officials, pursuant to its authority under Section 5 of the Fourteenth Amendment. *Fitzpatrick v. Bitzer, supra,* 427 U.S. at 446, 96 S.Ct. at 2667. Defendant Missouri Department of Mental Health, however, claims that plaintiff's Title VII count should be dismissed because plaintiff has failed to obtain a notice of right to sue from the Attorney General of the United States prior to the institution of this lawsuit as required by 42 U.S.C. § 2000e–5. Plaintiff contends that, while defendant's position may appear to have merit from a reading of the language of the statute, the EEOC regulations provide that the EEOC will issue the notice of right to sue in charges against a government, governmental agency or political subdivision.

There is no dispute that the EEOC issued plaintiff a right to sue letter and that plain-

tiff filed suit within ninety days after receiving the notice. Under the provisions of 42 U.S.C. § 2000e–5(f)(1)[3], a right to sue letter must be issued by the United States Attorney General in a case involving "a government, governmental agency, or political subdivision." The EEOC, however, has promulgated a rule which provides that it and not the Attorney General will issue the notice of right to sue when there has been a dismissal of the charge. 29 C.F.R. § 1601.28(d).[4]

The 1972 amendments to Title VII extended its coverage to prohibit employment discrimination by employers who were governments, governmental agencies, or political subdivisions. While those same amendments gave the EEOC the right to file suit with respect to private charges against private employers, Congress gave the Attorney General the right to file suit with respect to individual charges against state or local governmental employers and in the discretion of the court to intervene in suits by employees against governmental employers. "The purpose of referring discrimination complaints involving governmental employees to the Attorney General was twofold: (1) to limit the number of federal agencies authorized to sue state governments, and (2) to bring the prestige of the Attorney General to bear on the

reluctance of local governmental entities to comply with Title VII. 118 Cong.Rec. 1069–71 (1972)." *Osiecki v. Housing & Redevelopment Authority*, 481 F.Supp. 1229, 1232 (D.Minn.1979).

By requiring the Attorney General to issue the notice of right to sue letter, Congress provided that all complaints against governmental employers would be referred to the Attorney General for review. That requirement insures that the Attorney General would be able to review the file and make a determination whether it should exercise its discretionary power to file suit on behalf of the charging party. *English v. Ware County Dept. of Family & Children*, 546 F.Supp. 689, 691–92 (S.D.Ga. 1982).

■ It is apparent that 29 C.F.R. § 1601.28(d) conflicts with the clear language of the statute. Moreover, it shifts responsibility from the Attorney General to the EEOC, contrary to the clear intentions of Congress. "Courts need not defer to an administrative construction of a statute where there are 'compelling indications that it is wrong'." *See Espinoza v. Farah Mfg. Co.*, 414 U.S. 86, 94–5, 94 S.Ct. 334, 339, 38 L.Ed.2d 287 (1973) (citations omitted). Accordingly, the EEOC rule will be

---

**3.** 42 U.S.C.A. § 2000e–5(f)(1) provides in pertinent part:

 If a charge filed with the Commission pursuant to subsection (b) of this section is dismissed by the Commission, or if within one hundred and eighty days from the filing of such charge or the expiration of any period of reference under subsection (c) or (d) of this section, whichever is later, the Commission has not filed a civil action under this section or the Attorney General has not filed a civil action in a case involving a government, governmental agency, or political subdivision, or the Commission has not entered into a conciliation agreement to which the person aggrieved is a party, the Commission, or the Attorney General in a case involving a government, governmental agency, or political subdivision, shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent named in charge (A) by the person claiming to be aggrieved or (B) if such charge was filed by a member of the Commission, by any person whom the charge alleges

was aggrieved by the alleged unlawful employment practice.

**4.** The relevant portion of 29 C.F.R. § 1601.28(d) states:

 Notices of right-of-sue [sic] for charges against Governmental respondents. In all cases where the respondent is a government, governmental agency, or a political subdivision, the Commission will issue the notice of right to sue when there has been a dismissal of a charge .... In all other cases where the respondent is a government, governmental agency, or political subdivision, the Attorney General will issue the notice of right to sue ....

 Prior to November 4, 1980, the regulation provided:

 Notices of right to sue for charges against Governmental respondents. Notices of right to sue in cases where the respondent is a government, governmental agency, or a political subdivision thereof, shall be issued by the Attorney General, who has the authority to issue such notices. 29 C.F.R. § 1601.28(d), amended by 45 Fed.Reg. 73037, Nov. 4, 1980.

given no deference by this Court and we conclude that the Attorney General is required by statute to issue a notice of right to sue letter when the charge is dismissed in a case such as this.[5]

■ We do not agree with defendant, however, that the Title VII count must be dismissed. For reasons stated below, we conclude that the requirement of receiving a notice of right to sue is not jurisdictional but a requirement subject to equitable waiver, modification or estoppel and that, under the facts of this case, the requirement should be waived and plaintiff allowed to proceed.

In *Love v. Pullman Co.*, 404 U.S. 522, 92 S.Ct. 616, 30 L.Ed.2d 679 (1972), the Court announced the guiding principle for construing the provisions of Title VII. In that case, the Court refused to read literally a filing provision of Title VII and explained that a technical reading would be "particularly inappropriate in a statutory scheme in which laymen, unassisted by trained lawyers, initiate the process." *Id.* at 527, 92 S.Ct. at 619.

In *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982), the Court concluded that the statutory time limit for filing charges with the EEOC is not a jurisdictional prerequisite to filing a Title VII suit, but a requirement subject to waiver as well as tolling when equity so requires. The Court noted that treating the requirement in that fashion honors "the remedial purpose of the legislation as a whole without negating the particular purpose of the filing requirement, to give prompt notice to the employer." *Id.* at 398, 102 S.Ct. at 1135. In reaching its conclusion, the Court examined the structure of Title VII, the Congressional policy underlying it, and the Courts' prior Title VII decisions. *Id.* at 393, 102 S.Ct. at 1132.

Courts that have examined the question since *Zipes* have concluded that the receipt of the right-to-sue letter is not jurisdictional. *See e.g. Fouche v. Jekyll Island— State Park Authority*, 713 F.2d 1518 (11th Cir.1983); *Pinkard v. Pullman Standard*, 678 F.2d 1211 (5th Cir. Unit B 1982), *cert. denied*, — U.S. —, 103 S.Ct. 729, 74 L.Ed.2d 954 (1983); *English v. Ware County Dept. of Family & Children, supra*, 546 F.Supp. 689. As stated by the Court in *Pinkard:*

> The application of the factors considered in *Zipes v. Trans World Airlines, Inc.* to the precondition involved in this case compels the conclusion that the receipt of a right-to-sue letter is not a jurisdictional prerequisite, but rather is a condition precedent subject to equitable modification. First, we note that 42 U.S.C. § 2000e–5(f)(3), the relevant jurisdictional provision, does not limit jurisdiction to those cases in which the plaintiff has received a right-to-sue letter. Nor does section 2000e–5(f)(1), which requires that plaintiffs receive statutory notice of the right to sue before bringing a Title VII action, speak in jurisdictional terms. Moreover, nothing in the legislative history indicates that Congress intended the receipt of a right-to-sue letter to constitute a jurisdictional prerequisite. Thus, we are not inclined to deviate from the plain meaning of the statute. 678 F.2d at 1216–17.

We are convinced that the statutory requirement of the receipt of a right-to-sue letter from the Attorney General is not jurisdictional.

■ In the instant case, plaintiff, proceeding without the aid of an attorney, received a notice of right to sue from the EEOC. Thereafter, the plaintiff merely followed the directions of the EEOC. Plaintiff filed a *pro se* complaint in this Court within 90 days of receipt of the notice, attached his EEOC notice, charge, and determination, and filed a motion for appointment of counsel. No additional re-

---

**5.** This Court is familiar with the Eighth Circuit case *Shea v. City of St. Paul*, 601 F.2d 345 (8th Cir.1979) which was cited by the EEOC in support of its rule change. The *Shea* Court, however, did not decide the question of who must issue the notice when the employer is a governmental entity and, in fact, expressly noted that "[n]o party claims that the fact the defendant City is a governmental entity is significant to the disposition of this appeal." *Id.* at 350 n. 6.

quirements for filing suit were indicated by the EEOC and plaintiff therefore could reasonably expect that his Title VII suit met the technical statutory requirements. Plaintiff should not be punished for the inability of the EEOC and Attorney General to follow the terms of the statute.

Moreover, defendant cannot reasonably claim any prejudice. Defendant was sent a copy of the right-to-sue letter. Even though the letter was issued by the EEOC, it still functioned as a notice to defendant that the administrative charge was dismissed and that plaintiff was entitled to proceed in federal court. Given the broad purposes of Title VII, we conclude that the requirement of right-to-sue notice from the Attorney General should, as a matter of equity, be waived in this case.

### C. Title VII: Scope of the Charge

[14] Defendant contends that paragraphs 7(a) through 7(c) of Count I of plaintiff's complaint [6] should be dismissed because the allegations raised in those sections were not raised by him in the charge filed with the EEOC.

In his charge of discrimination plaintiff, in pertinent part stated that:

Robert E. Jones, White Male, Assistant Center Director (Adm.) gave me a letter on September 23, 1982 stating that I was being terminated due to an excessive error rate and an excessive back-log of work.

I believe I was terminated because of my race, black, in that:

1) Robert E. Jones told me not to worry about the back-log;

2) I was never warned prior to my termination;

3) Robert E. Jones & Elsie Shaw, white female, Receptionist, told me that I might have some problems because I'm black.

Paragraph 7 of plaintiff's complaint alleges:

Plaintiff was treated differently than were similarly situated white employees because of his race in the terms and conditions of his employment, including, but not limited to the following respects:

(a) Plaintiff was provided insufficient training in his duties as a Data Entry Operator;

(b) Plaintiff was never counseled or warned that his performance was perceived by his supervisors as deficient and was denied the opportunity to correct his job performance;

(c) Plaintiff was made the subject of racial comments and slurs;

(d) Plaintiff was terminated from his employment.

The Eighth Circuit has observed that: "It is well established that lay complainants' charges are to be construed broadly in a liberal manner in order to effect the 'remedial and humanitarian underpinnings of Title VII and of the crucial role played by the private litigant in the statutory scheme' Sanchez v. Standard Brands, Inc., 431 F.2d 455, 460 (5th Cir.1970)." EEOC v. Western Publishing Co., Inc., 502 F.2d 599, 602–03 (8th Cir.1974). Thus, a Title VII complainant may raise claims in Court "like or related" to the substance of the complainant's charge before the EEOC. Satz v. ITT Financial Corp., 619 F.2d 738, 741 (8th Cir.1980) (citing cases).

In the present case, the allegations in plaintiff's complaint are closely related to the substance of the plaintiff's EEOC charge. To require the charge and complaint to be identical would clearly be inappropriate in a statutory scheme in which laymen proceeding without the aid of an attorney initiate the process, Love v. Pullman, supra, 404 U.S. at 527, 92 S.Ct. at 619, and would be contrary to the remedial purposes of the statute.

---

**6.** Paragraph 7 of Count I of plaintiff's second amended complaint is identical to paragraph 7 of Count I of plaintiff's first amended complaint.

### III.

For the reasons stated, it is

ORDERED (1) that plaintiff's motion for leave to file a second amended complaint should be and is hereby granted. It is further

ORDERED (2) that defendant's motion to dismiss the complaint should be and is hereby denied.