787 F.2d 588
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND,
Plaintiff-Appellant,
v.
DEALERS TRANSPORT CO., Defendant-Appellee.
 85-5166
 United States Court of Appeals, Sixth Circuit.
 3/26/86
 
 REMANDED
 W.D.Tenn.
 ORDER
 Before: ENGEL, KENNEDY and CONTIE, Circuit Judges.
 PER CURIAM.
 
 
 1
 Central States, Southeast and Southwest Areas Pension Fund appeals the judgment entered in the United States District Court for the Western District of Tennessee affirming a Bankruptcy Court order denying Central States' motion to file an amended claim against Dealers Transport Company in Dealers' Chapter 11 bankruptcy proceeding. The amended claim was for $6,045,779.26--the amount of 'withdrawal liability' Dealers allegedly incurred under the Multiemployer Pension Plan Amendments Act of 1980 (MPPAA), Pub. L. No. 96-364, 94 Stat. 1208, by completely withdrawing from the Central States pension plan.
 
 
 2
 Dealers engaged in the business of transporting trucks and automobiles from factories to retailers. In April 1980, its principal customer, Ford Motor Company, discontinued using Dealers' services. Dealers began reducing its work force and, in May 1980, filed a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code, 11 U.S.C. Sec. 1101, et seq. At the time Dealers filed its petition, it employed approximately 370 transport truck drivers who were represented by various local unions affiliated with the International Brotherhood of Teamsters. Dealers was party to a three-year collective bargaining agreement that was due to expire on May 31, 1982. The agreement required Dealers to make pension contributions, on behalf of its drivers, to Central States. As of the date Dealers filed its petition, it had failed to meet some of these contribution obligations. On September 8, 1980, Central States filed two claims for contributions due and owing up to May 13, 1980.
 
 
 3
 On January 5, 1981, Dealers filed a proposed plan for reorganization. The plan contemplated full compensation of each class of claims. It provided that Dealers would not thereafter be engaged in business, but would serve as a holding company for its subsidiary corporations and other assets. The assets remaining after the payment of liabilities would be vested in Dealers. The proposed plan also included rejection of the collective bargaining agreement. Objections to the plan were due January 16, 1981. At the January 19, 1981 hearing to consider objections to Dealers' plan, the Bankruptcy Judge, after hearing union objections, deleted from the plan a proposal to reject the collective bargaining agreement. No other objections were made. The judge entered an order that day--January 19, 1981--confirming the modified reorganization plan. Over the next two days, a total of seven drivers worked for Dealers. On January 21, 1981, Dealers ceased employing any transport truck drivers.
 
 
 4
 On March 17, 1981, Central States filed in the Bankruptcy Court a claim as a priority administrative creditor for pension fund contributions due for the period between May 13, 1980 (reorganization petition filed) and January 21, 1981 (last work done by employees). The Bankruptcy Court scheduled a hearing for August 14, 1981 to consider Central States' claims. At the hearing, Dealers withdrew its objections to the claims filed in September 1980 and March 1981, and tendered a check for $139,071.58 as full and final payment of all claims by Central States. Central States apparently did not object to Dealers' motion to withdraw its objections, nor did it object to the Bankruptcy Court's decision to grant that motion. The court entered an order on August 14 granting the motion and stating: 'ORDERED, ADJUDGED AND DECREED that . . . [t]he tender by the debtor of its check in the amount of $139,071.58 into this court constitutes full and final payment of any and all claims of the Central States, Southeast and Southwest Areas Pension Fund and the Central States, Southeast and Southwest Areas Health and Welfare Fund against the debtor.' Central States refused to accept payment, but did not appeal the order.
 
 
 5
 During early and mid-1981, Central States' staff in Chicago prepared a claim for withdrawal liability against Dealers. The claim was drafted in the form of requested amendments to the already filed bankruptcy court claims. Those amendments were mailed to the Bankruptcy Court on August 14, 1981. The amendments were received and filed by the Bankruptcy Court on August 18, 1981. Dealers filed objections to the proposed amendments.
 
 
 6
 Meanwhile, Central States filed a separate action in the United States District Court for the Western District of Tennessee against the reorganized debtor to recover on its claim for withdrawal liability. It petitioned the Bankruptcy Court to stay Dealers' bankruptcy proceedings so that Central States could proceed with its federal district court action. The Bankruptcy Court considered the motion and decided, on October 7, 1982, not to stay its proceedings. The court held that complete withdrawal, for purposes of withdrawal liability under the Multiemployer Pension Plan Amendments Act of 1980, 29 U.S.C. Sec. 1381 et seq. ('MPPAA'), had occurred on April 24, 1980. Therefore, the effective date of such liability preceded the confirmation of the reorganization plan and could not constitute a claim against the reorganized company as a separate entity.
 
 
 7
 Dealers' objections to the proposed claim amendments in the bankruptcy proceeding were heard on November 12, 1982. At the end of the hearing, the court ruled orally on the matter. At one point, the court stated that the amendments were not timely filed. It also noted that the equities were on the side of Dealers and that Central States had not proved that its withdrawal liability claim was allowable in the bankruptcy proceeding. Finally, the court announced that it would make a general order sustaining Dealers' objections to the claim.
 
 
 8
 The court's order was filed on November 19, 1982. Central States appealed it and the October 7 order to the District Court. The District Court considered both appeals together. First, it noted that Central States now contended that the October 7 decision was nonappealable, and agreed with Central States based on its reading of 28 U.S.C. Sec. 1471. Section 1471 permits a bankruptcy court, in the interest of justice, to abstain from hearing proceedings within its jurisdiction, and states that such abstention, or a decision not to abstain, is not reviewable by appeal or otherwise. Neither party appeals that holding.
 
 
 9
 Central States also complained that the November 19 order must be remanded because it does not contain findings of fact or conclusions of law. The District Court rejected this contention noting that the record provides a sufficient basis for the Bankruptcy Court's decision to permit meaningful review. The District Court concluded that the oral ruling contains three bases for denying the amended claims: (1) the claims were not timely; (2) allowing the claims would frustrate the purpose of the Bankruptcy Act--rehabilitation of debtors; and (3) Central States did not prove the validity of its claim. Furthermore, the District Court concluded that the findings made in connection with the October 7 order clearly establish that Central States' withdrawal liability claim must fail on the merits.
 
 
 10
 We agree with Central States that the District Court erred and that this matter should be remanded to the Bankruptcy Court for findings of fact and conclusions of law in connection with its November 19 order. Bankruptcy Rule 7052 states that Rule 52 of the Federal Rules of Civil Procedure applies in adversary bankruptcy proceedings. Rule 52 requires that in all actions tried upon the facts the court 'shall find the facts specially and state separately its conclusions of law thereon . . ..' 'This rule is at least in part designed 'to afford the appellate court a clear understanding of the ground or basis of the decision of the trial court." Foulks v. Ohio Dept. of Rehabilitation and Correction, 713 F.2d 1229, 1233 (6th Cir. 1983) (quoting Snyder v. United States, 674 F.2d 1359 (10th Cir. 1982)). A remand is required unless it is possible to fully understand the issues without findings. Huard-Steinheiser, Inc. v. Henry, 280 F.2d 79, 85 (6th Cir. 1960). For example, if all of the evidence is documentary and the appellate court can pass upon the facts as well as the trial court, or if all the facts relied upon to support the judgment are in the record and are undisputed, or if the record as a w ole presents no genuine issue as to any material fact, there is no need to remand. King v. Commissioner of Internal Revenue, 458 F.2d 245, 249 (6th Cir. 1972). When there is only an oral opinion, the lower court must take 'great care to insure' that it 'fully sets forth its reasoning both as to legal standards employed and the underlying factual basis.' Garrison v. Jervis B. Webb Co., 583 F.2d 258, 261 n.3 (6th Cir. 1978).
 
 
 11
 The Bankruptcy Court made no specific findings of facts. It is unclear what law it applied, i.e., what timeliness requirements were violated and what facts it considered important in concluding that the requested amendments were untimely. We do not know whether the Bankruptcy Court ruled that the amendments were untimely because they were not filed before the mid-January deadline or whether it ruled that they were untimely because they weren't filed before the August 14 order. Nor can we tell whether the Bankruptcy Court treated the proposed amendments as amended claims or as new claims.
 
 
 12
 A good portion of this appeal addresses the issue of when complete withdrawal occurred. The November 19 order is not based explicitly on a resolution of that issue, but the Bankruptcy Court may have been relying on its previous conclusions with respect to complete withdrawal noted in the October 7 order. If the court's holding is based on the date of complete withdrawal, this Court needs to know the facts regarding operations on the critical date or dates and its reasons for selecting such date(s).
 
 
 13
 The Bankruptcy Court is, of course, free to base its decision on alternative grounds. However, in order for this Court to conduct meaningful review of the Bankruptcy Court's decision, and to preserve the distinction between original and appellate jurisdiction, the Bankruptcy Court must tell us what facts it found and what law it is applying in reaching its result. When exercising its discretion, it must state that it is doing so and its reasons so that we may review whether it has abused its discretion. Accordingly, this matter is remanded to the Bankruptcy Court for compliance with Bankruptcy Rule 7052.